**SPRING CONSTRUCTION COMPANY, INC., Appellant,**

v.

**Patricia Roberts HARRIS, Secretary of the Department of Housing and Urban Development, Parker-Riddick Village, Inc., a Virginia Corporation, Cogic Homes, Inc., a Virginia Corporation, Appellees.**

No. 76–2399.

United States Court of Appeals, Fourth Circuit.

Argued Aug. 8, 1977.

Decided Sept. 29, 1977.

J. H. Krug, Washington, D. C. (William S. Tennant, Krooth & Altman, Washington, D. C., William A. Cox, III, Norfolk, Va., on brief), for appellant.

Robert E. Richardson, Atty., Civ. Div., Dept. of Justice, Washington, D. C. (William B. Cummings, U. S. Atty., Alexandria, Va., Barbara Allen Babcock, Asst. Atty. Gen., Ronald R. Glancz, Atty., Civ. Div., Dept. of Justice, Washington, D. C., on brief), for appellees.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

K. K. HALL, Circuit Judge:

Plaintiff, Spring Construction Company, Inc., brought suit against the Secretary of the Department of Housing and Urban Development (HUD), Parker-Riddick Village, Inc., and Cogic Homes, Inc., seeking damages for breach of contract and equitable relief. After a trial by the court, the district court denied plaintiff any relief and entered judgment for the defendant. Plaintiff appealed. Parker-Riddick Village, Inc., and Cogic Homes, Inc., are not parties in this appeal.

We reverse the judgment of the district court and remand with instructions.

## I.

## FACTS

This suit arose from plaintiff's participation as a contractor in a federally-insured housing project. The relevant parties involved in the undertaking were:

1. Spring Construction Company (Spring)—plaintiff/appellant.
2. Department of Housing and Urban Development (HUD)—defendant/appellee.
3. Cogic Homes, Inc. (COGIC)—owner/mortgagor.
4. Parker-Riddick Village, Inc. (Parker-Riddick)—owner/mortgagor.

5. VNB Mortgage Corporation (VNB)—mortgagee.

The owners, both nonprofit, nonasset corporations, negotiated successfully with HUD and VNB to acquire money for the construction of two low-income housing developments. Pursuant to the appropriate provisions of the National Housing Act, 12 U.S.C. §§ 1701 *et seq.,* the owners received 100% financing, and plaintiff was named the prime contractor.

One of the many requirements which must be met before a housing project can receive HUD approval is that provision must be made for sewer connections. Without placing blame on any party, it is apparent that the initial closing occurred on June 9, 1971, without proper arrangements having been made for sewer connections. The facts are disputed as to when HUD knew, or should have known, of this complication, but it is stipulated that HUD was informed of the sewer problem by plaintiff on or about September 1, 1971. A meeting was held on January 12, 1972, at which a solution to the problem was sought, but no resolution of the difficulty resulted.

Despite HUD's knowledge of the sewer problem, it continued insuring mortgage advances from VNB to the owners, and, furthermore, HUD officials instructed plaintiff to continue work on the project while a solution to the problem was sought. Defendant Hills' Supplemental Answers to Interrogatories of Plaintiff.[1] Finally, on October 12, 1975, HUD informed the mortagee, VNB, that HUD would no longer insure mortgage advances; VNB refused further advances, and the project was shut down. The reasons given for HUD's withdrawal of the mortgage insurance all centered around the sewer dilemma.

The construction contract entered into by plaintiff and the owners of the project provided for monthly payments to the plaintiff with a 10% holdback, or retainage, from the amounts so paid. Concurrently, the building loan agreements between the owners and the mortgagee provided for a similar 10% holdback which was not to be paid to the mortgagors until approved by HUD.

At the time of the shutdown, the projects were 81.5% completed. Plaintiff had incurred substantial amounts in holdbacks by this time, in addition to other sums plaintiff claims for unpaid requisitions, additional work and material, lost profits and interest. We express no opinion at this time concerning the legitimacy of the individual claims. The projects were never completed by the parties herein, and after VNB assigned its rights and obligations under the various agreements to HUD, the projects were sold at a $2,100,000 loss.

## II.

### CONTRACTUAL REMEDIES

Plaintiff clearly has no cause of action against HUD based on the construction contracts between it and the two owners, because HUD was not a party to those agreements. Instead, plaintiff asserts that it is a creditor third party beneficiary of the building loan agreements between the two owners and the mortgagee. Under this theory, plaintiff would assume the legal positions of the mortgagors, possessing the same rights and obligations as the mortgagors. The obligation of HUD to pay the retainages to the plaintiff is premised on the fact that HUD assumed the obligations of the mortgagee upon the assignment of the building loan agreements from VNB to HUD, after the project collapsed.

#### A. Creditor Third Party Beneficiary.

■ During oral argument, defendant conceded that had plaintiff completed or been wrongfully prevented by HUD from completing the projects, the plaintiff would be a creditor third party beneficiary under

---

1. When this suit was filed, Carla A. Hills was the Secretary of Housing and Urban Development, and a named defendant. The present Secretary is now also the present defendant, Patricia Roberts Harris.

the building loan agreements.[2] Although we intimate no opinion on whether completion or wrongful prevention of completion by HUD is a necessary prerequisite to third party beneficiary status in this case, our holding that defendant waived any defense of nonperformance it may have possessed eliminates the necessity of considering the aforesaid as possible bars to plaintiff's third party beneficiary status. *See* part II(C) *infra*.

### B. HUD's Duty to Pay Retainages.

■ Defendant's own regulations provide that:

> The mortgagee shall be obligated, as a part of the mortgage transaction, to disburse the principal amount of the mortgage, to, or for the account of the mortgagor or to his creditors for his account and with his consent.

24 C.F.R. § 221.512. The implications of this section accompanied with the assignment of the building loan agreement to HUD were aptly stated by the district court in *Bennett, supra:*

> Inasmuch as HUD assumed the obligations of "lender" or "mortgagee" upon [the mortgagee's] assignment and pursuant to paragraph 18 of the building loan agreement,[1] it is equally obligated by regulation to dispurse (sic) proceeds to the mortgagor or the mortgagor's creditors.
>
> [1] Paragraph 18 of the building loan agreement provides in pertinent part: "This instrument shall be binding upon the parties hereto and their respective successors and assigns. . . . ."

*Bennett, supra* at 832–33.

In this case, the relevant statutory provisions and contractual clauses are almost identical to those in *Bennett*. Because we agree with the district court's reasoning therein, we hold that plaintiff is entitled to damages as a creditor third party beneficiary of the building loan agreement, unless defendant raises an effective bar to plaintiff's recovery.

### C. Defense of Nonperformance: Failure to Complete the Contract.

Defendant raises several contentions in opposition to plaintiff's recovery under the third party beneficiary theory. The thrust of all these contentions is that even if HUD is primarily obligated to pay the retainages to plaintiff under the third party beneficiary theory, plaintiff's failure to complete the contract is a bar to recovery. The mortgagee was not required to pay the 10% holdback to the mortgagor under the building loan agreement until "such time after completion as the commissioner authorizes the release of the holdback." Building Loan Agreement ¶ (4)(b). Inasmuch as under the third party beneficiary theory, the plaintiff assumes both the rights *and obligations* of the mortgagor, defendant asserts that the ultimate incompleteness of the contract bars recovery.

■ Although defendant correctly states the general principles of contract law relating to third party beneficiaries, we hold that defendant waived any defense of nonperformance it may have possessed.

It was stipulated by both parties that:

> On or about September 1, 1971, after construction began, Don Sprinkle for Spring Construction Co., Inc., called the attention of all interested parties to the fact that no provision was made for connection of the site of the two projects to the sewer treatment facility being constructed.

Plaintiff's Factual Contention (30), *incorporated into the Pre-Trial Order stipulations by* the Amendment to Pre-Trial Order, Amendment to Stipulations. Therefore, at the latest, defendant knew about the sewer problem on or about September 1, 1971.

After the date that the defendant unquestionably had knowledge of the sewer

---

2. Several courts have held that contractors involved in similar HUD projects can sue as creditor third party beneficiaries of the building loan agreements. *Trans-Bay Engineers & Builders, Inc. v. Hills,* 551 F.2d 370 (D.C. Cir. 1976); *Bennett Construction Company, Inc. v. Allen Gardens, Inc.,* 433 F.Supp. 825 (W.D.Mo. 1977); *American Fidelity Fire Ins. Co. v. Construcciones Werl, Inc.,* 407 F.Supp. 164 (D.V.I. 1975); *Travelers Indem. Co. v. First Nat'l State Bank of New Jersey,* 328 F.Supp. 208 (D.N.J. 1971).

problem, it allowed, even encouraged the plaintiff to continue construction, and as a necessary result thereof, plaintiff continued to incur the 10% holdback of contract payments. Defendant encouraged continued construction even though it had knowledge of the very condition which eventually led to the shutdown of the project.[3] In such a situation, HUD will not now be heard to say that the failure of the plaintiff to fully perform the contract bars recovery. Defendant's actions implicitly, if not explicitly, waived such a defense of nonperformance. *Cf. Bennett, supra* at 834–35; *American Fidelity, supra* at 182.[4] When HUD first became aware of the sewer problem, at the latest, September 1, 1971, it could have withdrawn its insurance of mortgage advances until such time as arrangements could have been made for the sewer connections, or it could have advised Spring to continue work at its own risk, or it could have made such other conditions as seemed appropriate at the time. Plaintiff then could have decided whether to continue operating under the contract at its own risk and chance losing the 10% holdback, or to pull out and attempt to collect the retainages withheld until that date. HUD provided plaintiff with no such choice, but urged Spring to continue construction with the assurance that the problem of sewer connections could be worked out later.

Therefore, we hold that the plaintiff is entitled to recover as a third party beneficiary of the building loan agreement, and that HUD, by its conduct, waived any defense of nonperformance.

### III.

### EQUITABLE REMEDIES

■ Plaintiff next claims that it is entitled to recover its losses as a matter of equity. There are two prerequisites to re-covery in equity in this case: First, there must be an identifiable res upon which an equitable lien can attach, and second, the facts of this case must give rise to an equitable lien.

### A.  Identifiable Res.

■ The identifiable res is found in two ways. First, the retainages which had accumulated until the date of the shutdown are identifiable and were intended eventually to compensate the plaintiff for its work. Second, the balance of the undisbursed loan proceeds also constitute an identifiable res, their purpose being to compensate those who further the housing projects, including the contractors. *See, e. g., Trans-Bay, supra* at 382; *Bennett* at 835. "Even if those undisbursed proceeds have now been commingled with other general HUD accounts, they continue to retain an identity as loan proceeds originally earmarked and intended for disbursal to the project contractor." *Bennett* at 835.

### B.  The Facts Giving Rise to an Equitable Lien.

■ The plaintiff asserts many different factual reasons why an equitable lien here attaches, but the most persuasive theory is that defendant will be unjustly enriched if it is not required to compensate plaintiff for the work performed. When HUD sold the project, albeit at a loss in excess of $2,000,000, the value of the project had been enhanced by plaintiff's work. "A court of equity has the power . . . to avoid unjust enrichment from the services rendered," *Trans-Bay, supra* at 382, and we hold that such unjust enrichment will occur if HUD does not compensate plaintiff for the work it expended in enhancing the value of the project which HUD eventually

---

**3.** Although HUD did not "order" the shutdown, its action of discontinuing the mortgage insurance had the practical effect of terminating the project, a result well within the contemplation of HUD.

**4.** We are aware that the cited cases involving HUD-insured projects are somewhat factually distinguishable since they dealt with situations where the construction, for all purposes, was completed. Nevertheless, this court believes that the actions of HUD in the instant case render such a distinction inconsequential.

sold. *Trans-Bay, supra; Bennett, supra* at 836.

### C. Defense of Nonperformance.

■ We adopt our reasoning contained in part II(C) of this opinion, and we hold that defendant waived any defense of nonperformance it may have been entitled to assert. Furthermore, "Any legal obstacles to recovery '. . . are *surmounted* and transcended by equitable considerations.'" *Bennett, supra* at 835, *quoting American Fidelity, supra* at 185.

### D. Defense of Unclean Hands.

■ Although the defendant raised the question of unclean hands, citing interlocking relationships between the various private parties involved in this project, this court believes that there were no actions on the part of plaintiff which would bar recovery. It cannot be said that Spring, or its officers, in either their capacity with Spring or with any other party to the project, were responsible for the sewer problem.

Therefore, we hold that the undisbursed loan proceeds, whether retainages or otherwise, constitute an identifiable res, and that an equitable lien attached to the res in favor of the plaintiff.

### IV.

### DAMAGES

The disposition of this case by the district court rendered a decision by it on the question of damages unnecessary, and although the question of damages was raised obliquely in this court, we must remand this case to the district court for an adjudication of the damages. Therefore, we vacate the judgment of the district court in favor of the defendant, and remand this case to the district court with directions to enter judgment for the plaintiff as to liability, and thereafter to determine what damages are recoverable by the plaintiff.

*VACATED AND REMANDED WITH DIRECTIONS.*