CAPITOL INDEMNITY CORPORATION

v.

FREEDOM HOUSE DEVELOPMENT CORPORATION, Massachusetts Housing Finance Agency, Patricia A. Harris, Secretary of the Department of Housing and Urban Development, Henry C. Boles, Lawyers Title Insurance Corporation, and First Minnesota Construction Company.

Civ. A. No. 74–1682–Z.

United States District Court, D. Massachusetts.

Feb. 1, 1980.

Michael J. Glazerman, Allen N. David, Robert D. Power, Peabody & Arnold, Boston, Mass., for Capitol Indemnity Corp.

Lawrence L. Blacker, Cardozo, Matera, Schwartzman & Blacker, Boston, Mass., for Freedom House Development Corp.

Albert F. Cullen, Jr., Cullen & Wall, Boston, Mass., for Massachusetts Housing Finance Agency.

Marshall D. Stein, Charles K. Mone, Asst. U. S. Attys., Boston, Mass., for Department of Housing and Urban Development.

E. R. Langenbach, Scott Tucker, R. D. Maciolek, Parker, Coulter, Daley & White, Boston, Mass., for Henry C. Boles.

Haskell Shapiro, Acheson H. Callaghan, Jr., Palmer & Dodge, Boston, Mass., for Lawyers Title Insurance Corp.

Irving H. Sheff, Boston, Mass., for First Minnesota Construction Co.

Andrew Lane, Gaston Snow & Ely Bartlett, Boston, Mass., for Antonio De J. Cardozo.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

This action arises from the failure of parties to a "Section 236" federally subsidized housing construction project[1] in Dorchester, Massachusetts to complete construction of the project according to the terms of their 1971 agreements. The project, Brunswick Gardens, was not finished on July 1, 1972, as the contract required. Construction was fifty percent complete at that time and the project was abandoned shortly thereafter. In June 1979, Brunswick Gardens was sold at a foreclosure sale.

The principals in this action were participants in the original project agreements: Freedom House Development Corporation (FHDC), the nonprofit corporation which was the sponsor and mortgagor of the project; Massachusetts Housing Finance Agency (MHFA), the mortgagee; the Department of Housing and Urban Development (HUD), the mortgage loan insuror; Lawyer's Title Insurance Company (LTIC), the issuer of a title insurance policy to HUD and MHFA on the land upon which the project was begun; First Minnesota Construction Company (FMCC), the general contractor; Henry Boles, the architect who prepared plans and specifications for the project; and Capitol Indemnity Company (Capitol), the issuer of performance bonds on the construction project.

Without detailing the rich history of events precedent, it is sufficient to recount that Capitol filed the original claim, a petition for a declaration of the rights and obligations of the defendants, and identified dozens of claimed deficiencies in the various defendants' financing and planning measures. In the ensuing five years de-

1. A central element of the project is mortgage loan insurance issued by the Department of Housing and Urban Development pursuant to § 236 of the National Housing Act, 12 U.S.C. § 1715z–1.

fendants, in various alliances, have identified their defenses and have asserted counterclaims and cross-claims. Now before me are separate motions by defendants HUD and LTIC against Capitol on its original claim, and against FMCC on its subsequent cross-claims, and a motion by LTIC against HUD on HUD's recent cross-claim. They are discussed in turn.

## I. Motion of Defendant HUD for Dismissal Against Capitol and FMCC

HUD moves to dismiss the original complaint insofar as it names HUD as a defendant, and FMCC's cross-claim, based first on the sovereign immunity of the United States and the lack of subject matter jurisdiction in the claims, and second, for failure to state claims for which relief can be granted.[2]

■ In its first argument, HUD suggests that the recent authority of *Marcus Garvey Square, Inc. v. Winston Burnett Const.*, 595 F.2d 1126 (9th Cir. 1979), which upheld sovereign immunity as a bar to a similar action, should control. *Marcus Garvey Square, supra*, determined that where a claim could not be satisfied from an identifiable source of funds in the control of the Secretary, the Secretary's specific waiver of sovereign immunity in 12 U.S.C. § 1702 was unavailing, and without a specific waiver, an action—in effect against the United States treasury—would not lie. HUD acknowledges, however, that *Marcus Garvey Square* states a minority view, and in any event, applies only to circumstances in which a plaintiff does not identify a discrete source of HUD funds from which a judgment could be satisfied. When a discrete "res" has been identified, actions like this have been successfully brought against the agency and have surmounted sovereign immunity obstacles on the very equitable lien theory which *Marcus Garvey Square* acknowledged. *See e. g., Trans-Bay Engineers and Builders, Inc. v. Hills*, 551 F.2d 370 (D.C. Cir. 1976); *Spring Construction*

*Co. v. Harris*, 562 F.2d 933 (4th Cir. 1977); *Bennett Construction Co. v. Allen Gardens, Inc.*, 433 F.Supp. 825 (W.D.Mo.1977); *F. W. Eversley & Co. v. East N. Y. Non-Profit HDFC*, 409 F.Supp. 791 (S.D.N.Y.1976); *Travelers Indemnity Co. v. First National State Bank of N. J.*, 328 F.Supp. 208 (D.N.J. 1971); *American Fidelity Fire Insurance Co. v. Construcciones Werl, Inc.*, 407 F.Supp. 164 (D.V.I.1975). The absence of an identifiable res to satisfy respondent's claim in *Marcus Garvey Square, supra*, distinguished that case from the many cases cited above, and in those prior cases claims against the Secretary have been uniformly allowed.

In the instant case, Capitol suggests that there are three possible identifiable sources of funds in the control of the Secretary from which a judgment could be satisfied: undisbursed mortgage proceeds, the Special Risk Insurance Fund created by 12 U.S.C. § 1715z–3(b), and the proceeds from the June 1979 foreclosure sale. While the availability of the Special Risk Insurance Fund proceeds for this claim would be, in large part, a question of law, see, *Marcus Garvey Square, supra*, at 1130, the question of the availability and control of the other possible sources of funds is primarily a question of fact to be resolved at trial. Because there are significant questions of fact with respect to funds available, and because the unavailability of such funds would be material—indeed, perhaps critical—to HUD's defense, summary judgment at this point is inappropriate.

■ HUD's second argument is that the award of a judgment on the theory of an equitable lien may apply only to completed projects. The Secretary supports the argument with reference to the practice of courts in this Commonwealth to reserve the use of such equitable judgments to prevent unjust enrichment in cases of substantial performance. She would distinguish *Spring Construction Co. v. Harris, supra*, where the project in question was not completed, as an

---

**2.** The claims of Capitol and FMCC are essentially the same. FMCC, although a nominal defendant, reasserts Capitol's claims in its cross-claims and has adopted Capitol's arguments for the purposes of these motions.

exceptional case in which the Secretary's conduct in inducing continued performance violated the terms of the construction contracts, and thus justified the extraordinary equitable action.

Plaintiff counters that the instant case is precisely the exception described in *Spring Construction Co. v. Harris*, and points to the allegations in the complaint that, notwithstanding deficiencies in defendants' performance, of which the agency had actual knowledge, HUD and other defendants urged FMCC to continue in construction and prevailed upon FMCC to undertake construction and remedial actions outside the scope of the construction agreement.

Under these circumstances, where the facts of the parties' conduct and the time and extent of the parties' knowledge of possible breaches in contracts are essential to the equitable relief sought by plaintiff, where such facts are in dispute and where such equitable relief, under the pleadings and affidavits would not be barred by law, HUD's motion for summary judgment is not well taken and it is, accordingly, denied.

## II. Motion of LTIC for Summary Judgment Against Capitol and FMCC

In its motions for summary judgment, defendant LTIC argues that its act of issuing a title insurance policy cannot, as a matter of law, give rise to a tort of negligent misrepresentation to parties not in privity with the contract. Capitol concedes that Massachusetts law has never allowed such recovery and that Capitol has no claim against LTIC under the policy.

Capitol argues, nevertheless, that Massachusetts tort law should be extended to infer a negligent representation by LTIC's issuance of the policy, and supports its suggestion with citation to a unique instance in which the Supreme Judicial Court of Massachusetts recognized such third-party liability, *Craig v. Everett M. Brooks Co.*, 351 Mass. 497, 222 N.E.2d 752 (1967). However, the Supreme Judicial Court has since restated the narrow boundaries of such liability, and this sole basis for tort liability is clearly distinguishable from the instant case.

■ Recovery for damages resulting from negligent misrepresentation is limited by a standard of foreseeability. *Anthony v. Vaughan*, 356 Mass. 673, 675, 255 N.E.2d 602 (1970), *Craig v. Everett M. Brooks Co., supra*, 351 Mass. at 501, 222 N.E.2d 752. While the Court acknowledged in *Craig* circumstances under which the claim for damages by a party not in privity were foreseeable, it premised its decision on the findings, 222 N.E.2d at 754, that the defendants' "purpose in staking out and mapping a tract was to enable the plaintiff to build", that the defendant had actual knowledge of plaintiff's reliance upon his work, and that "[t]he type and extent of any damage was foreseeable." *Id.* The Court has since compared this specifically defined scenario to the case in which unforeseeable claims would spring from alleged misrepresentation and characterized the latter as the "unfortunate result carefully avoided in the *Craig* case," *Anthony v. Vaughan, supra*, 255 N.E.2d at 604. As Justice Cardozo observed in *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931), the principal authority of both *Craig v. Everett M. Brooks Co.* and *Anthony v. Vaughan*, allowing claimants to impute a public representation to the issuance of a title insurance policy would not only open an unforeseeable fount of claims, but would make title insurers limitlessly "liable to purchasers who may wish the benefit of a policy without payment of a premium", *Ultramares Corp. v. Touche, supra*, 255 N.Y. at 188, 174 N.E. at 448.

■ The courts of Massachusetts have decreed a narrow exception to the general requirement that the tort of negligent misrepresentation arise from a relationship of contract privity. The courts have also warned of the dangers in extending that exception beyond the narrow boundaries of foreseeability by which it is now confined. In view of that standard, extending the tort of negligent misrepresentation to include the general liability of a title insurer to third persons is wholly unwarranted. Ac-

cordingly, LTIC's motions for summary judgment with respect to Capitol and FMCC are allowed.

### III. Motion of LTIC for Summary Judgment Against HUD

 Five years after the initiation of this action by Capitol against multiple defendants including LTIC and HUD, HUD filed a cross-claim against LTIC, attributing to a defect in title subsequent delays in the construction of the development. HUD claims against LTIC under the title insurance policy in which HUD with MHFA is co-insured. Although the initial claims against LTIC and HUD await trial, LTIC now moves for summary judgment, alleging two grounds for the claim that HUD, in any event, is barred from seeking relief against LTIC: HUD's failure to notify LTIC of the title defect in compliance with the terms of the policy and LTIC's alleged cure of title defect in reasonable time.

The first of these grounds is unavailing. LTIC argues that MHFA's notice of a possible claim by telephone, although timely, failed to satisfy the terms of the parties' Title Insurance Policy, which requires in Sec. 3B, notice "in writing". While LTIC acknowledged the oral notification promptly in writing and argues herein that it immediately cured the defect, it claims that this technical failure must bar HUD's recovery. Section 3B of the policy clearly does not contemplate such strict enforcement:

> failure to notify shall in no case prejudice the rights of any such insured under this policy unless the Company shall be prejudiced by such failure and then *only to the extent of such prejudice.* (emphasis added)

LTIC suggests no reason why the telephonic notice—upon which it acted promptly—prejudiced it, and none is apparent. Its claim that HUD deliberately withheld written notice is denied by HUD, and, at most, raises a factual issue to be resolved at trial. Summary judgment is thus inappropriate.

 LTIC's second claim is also unavailing. It invites the Court to determine, in advance of the trial, that LTIC cured the title defect discovered in 1971 "in reasonable time", and thus forestalled any liability under its policy with HUD. In support of its claim, LTIC points to the "decisive fact" that affidavits of LTIC personnel reflect a "total lack of urgency" on the part of the insured parties, LTIC's Memorandum in Support of Motion for Summary Judgment, at 11, and that the title defect was cured, in any event, within five months. HUD, on the other hand, contends that within the space of the five-month period, the defect caused a delay in the project development, so that the cure did not take place within a reasonable time.

 The question of compliance with the terms of an insurance policy "in reasonable time" is a question of fact. *Pawtucket Mutual Insurance Company v. Dolby*, 305 F.Supp. 703, 705 (D.Mass.1969). In this instance, facts critical to the determination of the reasonableness of the five-month period remain at issue. Particularly since results of the defect await diagnosis, pronouncing a timely "cure" in this instance would be premature. Under these circumstances there is no reason to depart from the rule that determining reasonableness should await the resolution of factual disputes at trial and LTIC's motion for summary judgment is, accordingly, denied.