UNITED STATES of America,
Plaintiff-Appellee,

v.

I-12 GARDEN APARTMENTS,
Defendant,

K & D Enterprises, Inc.,
Intervenor-Appellant.

No. 81–3652.

United States Court of Appeals,
Fifth Circuit.

April 25, 1983.

Ben F. Day, Baton Rouge, La., for intervenor-appellant.

Wm. White, Civ. Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before BROWN, GOLDBERG and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

In this second of three cases we decide today concerning rights to construction holdbacks on HUD-insured mortgages, a contractor appeals from a judgment entered after a bench trial dismissing its claim against HUD for retention amounts. Agreeing with the district court's conclusion that recovery under either a third-party beneficiary or unjust enrichment theory must be denied because of the contractor's inequitable and breaching conduct, we affirm, find the appeal frivolous, and award double costs.

### Facts and Procedural History

This case arises out of a § 221(d)(4) (12 U.S.C. § 1715*l*) housing project that fell on hard times. In 1971, the Secretary of HUD insured a $2,523,600 loan for construction of an apartment complex in Baton Rouge, Louisiana. At an "initial closing" I–12 Garden Apartments, the owner-sponsor, entered into a building loan agreement with American Bank & Trust Co. of Baton Rouge. That agreement was expressed in a HUD-prescribed form including its standard provision authorizing the bank to hold back 10 percent of the loan until "the commissioner authorizes the release of the holdback" and "until after the expiration of any period which mechanics and materialmen may have for filing liens."

This project, like the one involved in *Van-Tex, Inc. v. Pierce*, 703 F.2d 891, had an "identity of interest." I.W. Knippers, the general partner in I–12, was also the co-owner of K & D Enterprises, the contractor. At the initial closing I–12 and K & D entered into the HUD-prescribed cost-plus construction contract, which included the usual provision relating to holdbacks:

> The balance due the Contractor hereunder shall be payable upon the expiration of 30 days after the work hereunder is fully completed, provided the following have occurred:
>
> (1) All work hereunder requiring inspection by municipal or other governmental authorities having jurisdiction has been inspected and approved by such authorities . . .
>
> (2) All certificates of occupancy, or other approvals, with respect to all units of the project have been issued by State or local governmental authorities having jurisdiction; and
>
> (3) Permissions to occupy (FHA Form No. 2485) for all units of the project have been issued by the Commissioner.

The roughly parallel provisions of the loan agreement and the construction contract meant that the lender did not lend to the owner and the owner did not pay to the contractor 10 percent of their respective total obligations except on defined conditions.

By September 1972, construction of the apartment complex was substantially complete. With HUD approval one-half of the holdback was released and one-half was retained until final closing. Shortly thereafter, I–12 became erratic in its interest payments on the loan agreement. The bank became insecure. Calling on its insurance on June 17, 1974, the bank assigned its mortgage to HUD.

The "final closing" never took place. Occupancy in the apartment project never rose above 35 percent. K & D maintains that low occupancy was caused by a soft rental market, but the quality of the project may have been part of the problem. To make the parking lot for the apartment complex, K & D paved over clearing debris including tree stumps. As the debris rotted, the parking lot not unexpectedly subsided. Other defects were already apparent. Inadequate flashing led to water damage. Stairwells rusted and had to be sandblasted and repainted. This delivery of a shabbily built project would be enough to bar additional payment to the contractor. Yet, sadly, for the taxpayer there is more.

I.W. Knippers, the general partner in I–12,[1] received an $18,000 cash payment from Gulf States Utilities Co. for going all-electric in constructing the building. Knippers also received a cash payment from the architect and a $25,236 "finder's fee" from American Bank & Trust, the mortgagee. Even the concession for the coin-operated laundry machines was given to a relative. Knippers falsely certified to HUD that he had received no such payments. In addition K & D Enterprises failed to disclose, as it was required to do, "identities of interest" in the project between it and subcontrac-

tors. Then, in 1975, I.W. Knippers was convicted and sentenced for violating 18 U.S.C. § 1010 by intentionally making false statements to HUD in connection with the project.

In 1977, HUD filed this suit against I–12 to foreclose the mortgage on the apartment project acquired from American Bank and Trust. K & D Enterprises, the contractor, intervened to assert its claim for the 5 percent construction retainage. HUD counterclaimed for damages for defective construction. The district court granted HUD a default judgment of foreclosure on the apartment project. As in *Van-Tex, Inc. v. Pierce*, at 896, the mortgagor was not personally liable on the mortgage note; hence the judgment was only *in rem* against the property. After a bench trial, the district court dismissed K & D's intervention on the grounds that K & D and I–12's inequitable conduct, and the substantial identity of interest between the two, barred recovery on either third-party beneficiary or unjust enrichment grounds. The district court awarded HUD $87,000 on its counterclaim. K & D appeals.

### Third-Party Beneficiary

K & D maintains that under established principles of law it is entitled to recover the retainage as a third-party beneficiary of the building loan agreement, and that it is entitled to recover this amount from HUD now that the mortgage has been assigned to it. *See Trans-Bay Engineers and Builders, Inc. v. Hills*, 551 F.2d 370 (D.C.Cir.1976); *Spring Construction Co. v. Harris*, 562 F.2d 933 (4th Cir.1977).

As in *Van-Tex, Inc. v. Pierce*, at 898, we need not decide whether a contractor on a § 221(d)(4) project may be a third-party beneficiary of the building loan agreement. Nor need we decide, assuming third-party beneficiary status, whether the contractor's right to retention amounts "vests," to bor-

---

1. After the initial closing, the I–12 partnership agreement was amended so as to add I.W. Knippers' son Eddie, I–12 Management Co., and Terrace Associates, Inc., as general part-

ners. A number of limited partners were also added. As a result of this amendment, each of the original partners received approximately $15,000.

row the *Trans-Bay* court's terminology, when the building is complete and the other conditions in the construction contract have been met. In any event, the record establishes conclusively that material breaches of the building loan agreement occurred before completion of the apartment project. I–12 failed to report "identities of interest." It filed false cost certifications. Far from being only technical, these violations of I–12's contractual commitment forced HUD to spend fourteen months certifying costs. It matters not whether I–12 or K & D was responsible for the transgressions, since K & D's rights as a third-party beneficiary were subsidiary to I–12's. Furthermore, I–12 and K & D were practically speaking the same entity.

K & D points out that the inflated costs were disallowed from the retention amounts due, estimated by K & D to be approximately $83,000 and by HUD to be approximately $12,000. But this does not alter the fact that I–12 breached the contract by repeatedly misleading HUD. Nor does subtracting the hidden rebates and kickbacks from the retainage compensate HUD for the substantial costs of the certification process itself.

■ At least one court has categorized the third-party beneficiary theory of recovery as an equitable doctrine, and recognized that inequitable conduct, similar to that present here, may bar recovery. *See Mursor Builders, Inc. v. Crown Mountain Apartment Associates*, 467 F.Supp. 1316 at 1334–35 (D.V.I.1978). We need not decide, however, whether "unclean hands" is a defense to K & D's third-party beneficiary claim. The claim fails in any event with I–12's material breach of the building loan agreement.

### Unjust Enrichment

As we noted in *Van-Tex, Inc. v. Pierce*, at 894–895, contractors' recoveries from HUD have rested on unjust enrichment. *See, e.g., S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 41 (2d Cir.1979); *Spring Construction Co. v. Harris*, 562 F.2d at 937; *Trans-Bay*, 551 F.2d at 381–382.

Yet along with an equitable remedy comes such equitable defenses as "unclean hands." *See Trans-Bay*, 551 F.2d at 383; *Mursor Builders, Inc. v. Crown Mountain Apartment Associates*, 467 F.Supp. 1316, 1334 (D.V.I.1978). We do not agree with HUD that identity of interest on a § 221(d)(4) project by itself amounts to unclean hands. Indeed identity of interest is *de rigueur* on such projects, because it enables the owner-sponsor to reduce its initial investment. Recalling that the unjust enrichment inquiry is whether there was a reasonable expectation that HUD would make good on retention amounts, *see Van-Tex, Inc. v. Pierce*, at 897, a sufficiently great identity of interest, if disclosed to and approved by HUD, might create such an expectation. It does not follow, however, that when the overlap between contractor and owner is substantial, as here, the owner's and contractor's conduct ought not be attributed to each other.

■ Here I–12 and K & D engaged in more than enough misconduct to justify the district court's invocation of the "unclean hands" defense. We have noted that "identities of interest," rebates, and kickbacks were concealed. I–12 and K & D set out to deceive HUD for hefty profits through hidden margins. Having chosen this method of profit-taking, we will not allow them to invoke a theory of recovery whose premise is that the contractor had no one else to look to for protection.

### HUD's Counterclaim

■ K & D also argues that relief on the government's counterclaim should not have been granted. It contends that the $87,000 damage award represents compensation for design defects, not construction defects. However, $70,000 of that award was for the collapsing parking lot. As K & D conceded at oral argument, there was testimony that this problem had been caused by K & D's unfortunate decision to use this area of the site as a landfill. The rest of the damage award was for the cost of repairing the stairwells. Here there was testimony that the fabricator of the stairs had not used an

industrial sealer to prevent rusting. Hence, the entire damage award on the counter-claim was supported by the evidence.

*Conclusion*

The district court was correct in holding that the inequitable conduct of K & D and I–12 barred recovery on unjust en-richment grounds and, because it was a material breach of the building loan agree-ment, on third-party beneficiary grounds as well. Finding the contractor's claim to be supported only by bravado, we affirm. Finding the appeal frivolous, we award the government double costs.

AFFIRMED.