703 F.2d 904
 COMMERCIAL STANDARD INSURANCE COMPANY, Plaintiff-Appellee-Appellant,
v.
BRYCE STREET APARTMENTS, LTD., et al., Defendants.
RYAN MORTGAGE COMPANY, et al., Defendants-Appellees,
v.
Samuel R. PIERCE, Jr., Secretary, Department of Housing and
Urban Development, Defendant-Appellant.
 No. 81-1578.
 United States Court of Appeals,
Fifth Circuit.
 April 25, 1983.
 
 James A. Rolfe, U.S. Atty., Anthony W. Vaughn, Asst. U.S. Atty., Fort Worth, Tex., Michael Kimmel, Atty., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., for defendant-appellant.
 McBryde, Bogle & Green, John F. Green, Jr., Fort Worth, Tex., for Commercial Standard Ins. Co.
 Sloan B. Blair, Fort Worth, Tex., for Ryan Mortg. Co.
 Jerry Tidwell, Weatherford, Tex., for Judy McVeigh Cordell.
 Appeals from the United States District Court for the Northern District of Texas.
 Before BROWN, GOLDBERG, and HIGGINBOTHAM, Circuit Judges.
 PATRICK E. HIGGINBOTHAM, Circuit Judge:
 
 
 1
 This is the third and final case we decide today concerning rights to construction holdbacks on projects financed by HUD-insured mortgages. Commercial Standard Insurance Co., a surety, brought suit against HUD and several other parties to recover amounts it had paid in satisfaction of subcontractors' claims. It urged that it was entitled to recover the sum of unadvanced mortgage proceeds from HUD both because the subcontractors were third-party beneficiaries and on grounds of unjust enrichment. After a bench trial, the district court entered a judgment against HUD on a third-party beneficiary rationale awarding Commercial Standard the retainage, less any amount it recovered under a separate indemnity agreement. We affirm.
 
 Facts and Procedural History
 
 2
 This appeal, unlike the preceding two, is concerned with a Sec. 236 (12 U.S.C. Sec. 1715z-1) low-income housing project. In May 1972, HUD executed a commitment to insure mortgage advances in a low-income housing project in Fort Worth, Texas. Ryan Mortgage Co. was the mortgagee on this $386,500 mortgage; Bryce Street Apartments, Ltd., a for-profit limited partnership, was the mortgagor.
 
 
 3
 The initial closing took place in June, at which time Ryan and Bryce Street signed the building loan agreement. At the same time Bryce Street and Lindsey Construction Co. entered into a cost-plus construction contract. Lindsey Construction Co., a sole proprietorship, was owned by the general partner in Bryce Street. Thus the familiar "identity of interest" existed.
 
 
 4
 Both the building loan agreement and the cost-plus construction contract were on the usual HUD-prescribed forms. The former contained the standard provision relating to holdbacks:
 
 
 5
 The Borrower shall make monthly applications on FHA Form No. 2403 for advances of mortgage proceeds from the Lender. Applications for advances with respect to construction items shall be for amounts equal to (i) the total value of classes of the work acceptably completed; plus (ii) the value of materials and equipment not incorporated in the work, but delivered to and suitably stored at the site; less (iii) 10 percent (holdback) and less prior advances....
 
 
 6
 ... The balance due the Borrower hereunder shall be payable at such time after completion as the commissioner authorizes the release of the holdback. However, the Lender may withhold final payment until after the expiration of any period which mechanics and materialmen may have for filing liens.
 
 So did the latter:
 
 7
 The balance due the Contractor hereunder shall be payable upon the expiration of 30 days after the work hereunder is fully completed, provided the following have occurred:
 
 
 8
 (1) All work hereunder requiring inspection by municipal or other governmental authorities having jurisdiction has been inspected and approved by such authorities ...
 
 
 9
 (2) All certificates of occupancy, or other approvals, with respect to all units of the project have been issued by State or local governmental authorities having jurisdiction; and
 
 
 10
 (3) Permissions to occupy (FHA Form No. 2485) for all units of the project have been issued by the Commissioner.
 
 
 11
 Commercial Standard furnished a payment and performance bond in connection with the construction contract. Work on the project commenced soon thereafter. Pursuant to the terms of the building loan agreement, Ryan withheld 10 percent retainage as construction proceeded. By April 1973, Lindsey Construction Co. had completed all physical construction. On November 3, 1973, after application had been made for the final advance, Bryce Street defaulted on its obligations. Ryan requested HUD to authorize release of the final advance and to insure that amount; HUD refused. Ryan subsequently foreclosed on the property and deeded it to HUD in return for the mortgage insurance. HUD eventually sold the project for $256,000.
 
 
 12
 Following the completion of construction, various unpaid subcontractors filed liens against the property. Commercial Standard compromised their claims, then brought the present action as subrogee against Lindsey Construction, Bryce Street, Ryan Mortgage, the Secretary of HUD, and the guarantors on an indemnity agreement. After a bench trial, in which most of the fact issues were stipulated, the district court held that Commercial Standard was entitled to recover the retainage from HUD, less any amount it recovered from other parties under a separate indemnity agreement. The district court's damage award was based on the conclusion that Commercial Standard was the subrogee of third-party beneficiaries of the building loan agreement, and had a valid third-party beneficiary claim against HUD. HUD appeals the district court's judgment, asserting several reasons why recovery should not have been granted. We will deal with them in turn, beginning with those that were presented to the court below.
 
 Trans-Bay Once More
 
 13
 In Trans-Bay Engineers & Builders, Inc. v. Hills, 551 F.2d 370 (D.C.Cir.1976), as we have noted in Van-Tex, Inc. v. Pierce, 703 F.2d 891, the D.C. Circuit held that a retainage-less contractor on a defaulting Sec. 236 project had two avenues of recovery from HUD--third-party beneficiary and unjust enrichment. These two theories of recovery have been sustained in other cases. See, e.g., Spring Construction Co. v. Harris, 562 F.2d 933 (4th Cir.1977). In this appeal HUD does not dispute the general principle that a Sec. 236 contractor or, as here, a Sec. 236 subcontractor may be a third-party beneficiary of the building loan agreement. Indeed HUD in its brief says, "We have no difficulty with this as a general statement." Therefore we shall assume for the purposes of this case third-party beneficiary status, and leave the issue to be decided by another panel on another day.
 
 
 14
 HUD's Liability on the Building Loan Agreement
 
 
 15
 HUD argues, however, that even if the subcontractors could recover from the original mortgagee, they have no claims against HUD. The agency, it contends, never assumed the obligations of the building loan agreement. HUD emphasizes that in this case, unlike in Trans-Bay and Spring Construction, the mortgagee foreclosed on the property before the assignment to HUD took place. Thus, HUD only assumed property rights and claims, not lending obligations.
 
 
 16
 We are not convinced. The act of foreclosure cannot extinguish third-party beneficiary claims against the mortgagee. When HUD was assigned the mortgagee's property rights and its claims against the mortgagor, it also assumed the mortgagee's liabilities under the building loan agreement. The building loan agreement itself expressly states, "As used in this instrument, the term 'Lender' shall be deemed to include any person to whom the Note and Mortgage referred to above shall be assigned with the knowledge and consent of the Commissioner. This instrument shall be binding upon the parties hereto and their respective successors and assigns." See Spring Construction Co. v. Harris, 562 F.2d at 936; Bennett Construction Co. v. Allen Gardens, Inc., 433 F.Supp. 825, 832-833 (W.D.Mo.1977). The district court was correct in ruling that here, as in Trans-Bay and the other Sec. 236 cases, HUD inherited the mortgagee's duties under the building loan agreement.
 
 
 17
 In Aetna Casualty and Surety Co. v. United States, 655 F.2d 1047 (Ct.Cl.1981), the court held that the United States was not liable as a successor mortgagee on a Sec. 236 mortgage agreement. The court reasoned that by the terms of 12 U.S.C. Sec. 1713, the government only assumes the rights and not the duties of the mortgagee following a default assignment. The Court of Claims recognized that "other decisions ... have assumed or concluded that the Secretary can be compelled to disburse unpaid mortgage proceeds by those claiming as third-party beneficiaries to the Building Loan Agreement":
 
 
 18
 The differing result may be explained in part in that none of those cases were concerned with this issue as a jurisdictional matter, i.e., jurisdiction over the Secretary was present under statutes other than the Tucker Act. Those cases, instead, used the statute and the various agreements to define substantive rights of parties properly before those courts. We, of course, must approach the jurisdictional issue with more constraint and therefore decline to follow the reasoning of those cases.
 
 
 19
 Id. at 1056 n. 16 (emphasis in original). Our jurisdictional font, unlike that of the Court of Claims, is Sec. 1702. We see nothing in Sec. 1713 that explicitly or implicitly negates the proposition that HUD assumes liabilities when it assumes rights under the building loan agreement. We therefore believe Sec. 1713 must be read together with the express provision in the building loan agreement.
 
 Commercial's Rights as Subrogee
 
 20
 HUD also maintains, contrary to what the district court concluded, that Commercial Standard's rights as a surety are not "superior" to HUD's. HUD's argument here is somewhat unclear. To some extent, HUD appears to be simply rearguing the ultimate issue in the case--whether Commercial Standard may recover the retainage from HUD. On the other hand, to the extent that HUD is challenging Commercial Standard's succession to the subcontractors' causes of action, this contention is foreclosed by the terms of the payment bond and the settlements with the various subcontractors. See Travelers Indemnity Co. v. First National State Bank of New Jersey, 328 F.Supp. 208, 215 (D.N.J.1971).
 
 Subcontractors' Liens
 
 21
 HUD's most vigorously pressed contention on appeal is that third-party beneficiary recovery must be denied because the unpaid subcontractors filed liens against the property. As it interprets the building loan agreement, release of the holdbacks is contingent on the absence of materialmen's and mechanics' liens. HUD emphasizes that in this case it refused to authorize release of the holdbacks only because the liens were a cloud on title.
 
 
 22
 The district court's thorough opinion does not discuss liens. There is a good reason for this: HUD's contention was not presented below. Neither in the pretrial order nor in its trial brief did HUD assert that the filing of liens had any impact on the case. We decline to reach such issues. "Absent a showing of denial of a fair trial, which would result in a miscarriage of justice, [citation omitted], we do not consider issues only raised for the first time on appeal." Mitchell v. M.D. Anderson Hospital, 679 F.2d 88, 91-92 (5th Cir.1982). Seeing no miscarriage of justice, we will apply this sound rule, which guards the institutional integrity of both the trial and appellate courts, to this case. We take this occasion to repeat: we do not sit to hear cases de novo. The time for sorting out theories begins long before the filing of a notice of appeal.
 
 
 23
 At oral argument HUD made the suggestion that because the liens were a matter of record the issue of their impact could be raised initially on appeal. Not so. The rule against raising issues for the first time on appeal prohibits doing just what HUD has done in this case, that is, scanning the record for new theories.
 
 
 24
 HUD also took the position at oral argument that, putting the question of liens aside, third-party beneficiary recovery should have been denied because Bryce Street defaulted in interest payments before HUD had been asked to authorize release of holdbacks, although after the contractor had applied to the lender for their release. HUD maintained at oral argument that the building loan agreement permits the lender to withhold retainage until HUD has been asked to authorize its release. This novel interpretation of the building loan agreement was not presented below or in HUD's briefs. We decline to reach it here.
 
 Prejudgment Interest
 
 25
 The district court ordered that HUD pay Commercial Standard $45,482.39, a figure it arrived at by computing interest on the original retention amount of $30,278. Since the original holdback was less than what Commercial Standard paid out in settling the subcontractors' claims, HUD does not dispute that if Commercial Standard is entitled to recover holdbacks, it is entitled to the entire retention amount.
 
 
 26
 HUD does challenge the award of prejudgment interest dating back to April 3, 1973. First, HUD contends that no prejudgment interest should have been awarded for the time period before April 16, 1979, the date (according to HUD) of Commercial Standard's first demand for payment. We disagree. The availability of prejudgment interest depends upon the "principles of law" that govern in the area of substantive liability. Illinois Central R. Co. v. Texas Eastern Transmission Corp., 551 F.2d 943, 944 (5th Cir.1977) (on petition for rehearing). Here the liability is fundamentally contractual, and a make-whole remedy, providing interest from the date when the holdbacks arguably should have been released, is therefore appropriate. See Trans-Bay, 551 F.2d at 383 (interest on damage award to run from date when contractor's rights to retention amounts "vested"). Nor do we agree with HUD's contention that the rate of interest must be limited to the rate at which interest may accrue on the mortgage insurance proceeds. See 24 C.F.R. Sec. 207.259(d). We are concerned here with HUD's liability to the mortgagor and third parties; HUD's liability to the mortgagee does not necessarily delineate the full scope of that liability.
 
 Conclusion
 
 27
 In sum, we hold that HUD succeeded to Ryan's duties under the building loan agreement and that Commercial Standard succeeded to the subcontractors' rights. We decline to consider HUD's contention regarding liens that was not presented to the trial court. The judgment of the district court is therefore affirmed. In view of our affirmance of the district court's decision, we need not reach the merits of Commercial Standard's protective cross-appeal against Ryan for the sum of the unadvanced mortgage proceeds.
 
 
 28
 AFFIRMED.