**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joseph GALLIPOLI, Defendant-Appellant.**

**No. 78–5650.**

United States Court of Appeals, Fifth Circuit.

July 20, 1979.

Joel Kaplan, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Alan L. Weisberg, Linda Collins Hertz, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and CLARK and VANCE, Circuit Judges.

CHARLES CLARK, Circuit Judge:

The appellant Joseph Gallipoli appeals from his conviction on one count of conspiracy to sell and dispose of stolen goods in violation of 18 U.S.C. §§ 371, 2315, and one count of knowingly selling and disposing of stolen goods in violation of 18 U.S.C. §§ 2, 2315. We affirm.

I.

Gallipoli was indicted on April 7, 1977, by a federal grand jury in the Southern District of Florida on one substantive and one conspiracy count arising from the alleged sale of approximately 1,000 blank airline tickets stolen from a travel agency in Hato Rey, Puerto Rico. Gallipoli failed to appear for his arraignment on April 14, 1977, and was listed as a fugitive. Thereafter Gallipoli came under the custody of the state of New Jersey on unrelated charges. On July 1, 1977, the federal government lodged a detainer with the New Jersey prison authorities based on the April 7 indictment in the Southern District of Florida.

The United States and the state of New Jersey are both signatories to the Interstate Agreement on Detainers. *See* 18 U.S.C. App. pp. 288–292 (1979 Supp.). Pursuant to the procedures provided in that Agreement, Gallipoli was transferred from the custody of New Jersey to the custody of the United States and sent to the Southern District of Florida on May 26, 1978. On May 31, 1978, Gallipoli was arraigned in federal district court in Florida and counsel was appointed to represent him. Gallipoli was then placed in the Federal Correctional Institution in Miami to await trial.

· On June 1, 1978, while awaiting his federal trial, a detainer was lodged against Galli-

poli by the state of Florida. Florida is also a party to the Interstate Agreement on Detainers. The United States transferred Gallipoli to Florida custody on July 20, 1978. Florida returned Gallipoli to federal custody on September 14, 1978. Gallipoli was then tried on the federal charges and adjudged guilty on October 13, 1978. After sentencing, he was returned to New Jersey to finish the prison term he was serving in that state prior to his transfer to federal custody.

On appeal Gallipoli first claims that his intermediate transfer from United States custody to the custody of the state of Florida voided the federal indictment under which he was convicted. Gallipoli secondly argues that an impermissible variance existed between the theory under which the government proceeded on Count II and the wording of that count in the indictment.

## II.

The Interstate Agreement on Detainers has been enacted by 46 states, the United States and the District of Columbia. *See* 18 U.S.C. App. pp. 288–292 (1979 Supp.); *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). As set forth in Article I of the Agreement, its purpose is to alleviate uncertainties in the status of prisoners who are in the custody of one jurisdiction while at the same time facing unresolved charges in other jurisdictions. The Agreement is premised on the principle that unresolved charges "obstruct programs of prisoner treatment and rehabilitation" and therefore ought to be resolved through "the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." Agreement, Art. I; *United States v. Mauro, supra,* 98 S.Ct. at 1838–1839.

■ The appellant does not claim that under the terms of the Agreement there was anything improper in the procedures employed to transfer him from New Jersey custody to federal custody in Florida. Instead, the appellant argues only that the United States acted illegally in temporarily tendering him to the state of Florida.

We need not decide whether the United States as the sending jurisdiction and Florida as the receiving jurisdiction acted improperly in the transfer of the appellant between those two sovereigns, because that transfer had no practical or legal effect on the appellant's federal convictions. It is only the transfer between New Jersey as sender and the United States as receiver that is relevant to the federal convictions, and there was nothing at all improper in that transaction.

The Agreement provides for the sanction of dismissal of an indictment against a prisoner only when a receiving state fails to try the prisoner on the indictment that is the subject of the transfer before sending the prisoner back to the sending state. Agreement, Art. IV(e). Here, the United States fully complied with that obligation by trying Gallipoli before returning him to New Jersey. If any wrong was done the appellant by the transfer between the United States and Florida, that wrong arose out of whatever adverse consequences ensued from the Florida state charges. If they exist, any rights the appellant may have to challenge that transfer are independent of the appellant's federal convictions and were properly assertable only as part of the proceedings on the Florida state charge. They have no relevance in this action.

## III.

■ Count II of the indictment states in pertinent part that the appellant:

[D]id wilfully and knowingly sell and dispose of goods, merchandise and securities, the value of which exceeded $5,000, said securities which were stolen, unlawfully converted, taken and subsequently transported in interstate commerce, knowing the same to have been stolen, unlawfully converted, and taken, to-wit: In excess of 1,000 airline tickets stolen from Agencias Birthorn, Inc., Hato Rey, Puerto Rico, on August 4, 1975, and subsequently transported to Dade County.

Airline tickets are not securities. *United States v. Jones,* 450 F.2d 523 (5th Cir. 1971).

However, airline tickets, including blank tickets, are "goods or merchandise" within the meaning of the statute. *See, United States v. Moore,* 571 F.2d 154 (3rd Cir. 1978), *cert. denied,* 435 U.S. 956, 98 S.Ct. 1589, 55 L.Ed.2d 808 (blank Ticketron tickets). The appellant does not contest the fact that the stolen blank airline tickets were goods or merchandise of a value of $5,000 or more. *Cf. United States v. Reid,* 586 F.2d 393 (5th Cir. 1978). Rather, the appellant argues that the grand jury's inclusion of the phrase "said securities" in the indictment limited the government to a theory that the tickets were securities and that therefore the indictment was insufficient to support the conviction as a matter of law.

 The validity of an indictment must be determined by practical, not technical, considerations. *United States v. Guthartz,* 573 F.2d 225, 227 (5th Cir. 1978); *United States v. London,* 550 F.2d 206, 211 (5th Cir. 1977). In assessing its meaning a court must read the indictment as a whole. *United States v. Markham,* 537 F.2d 187, 192 (5th Cir. 1976). An indictment is valid if it contains the elements of the offense charged and fairly informs the defendant of that charge, and enables a defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). The question is whether the crucial transactions relied upon to demonstrate the offense are identified. *United States v. Smith,* 523 F.2d 771, 779 (5th Cir. 1975); *United States v. London, supra,* 550 F.2d at 211.

Although the grand jury's language in Count II may, by hindsight, be seen as inartful, there can be no reasonable question as to its meaning. The indictment states that the appellant sold and disposed of "goods, merchandise and securities," thus tracking the statutory language of 18 U.S.C. § 2315, and identified exactly what it was the appellant disposed of:

to-wit: In excess of 1,000 airline tickets stolen from Agencias Bithorn, Inc., Hato Rey, Puerto Rico, on August 4, 1975 . .

The use of the phrase "said securities" is no more than surplusage which cannot plausibly override the critical facts specified: Joseph Gallipoli stood accused of selling stolen airline tickets. The indictment fairly apprised the appellant of the charge against him and adequately protected him from danger of double jeopardy. The appellant's hyper-technical objection to its syntax and wording has no merit.

AFFIRMED.