OPINION of the court
David B. Saxe, J.
This case involves the issue of loss allocation between an airline and passenger arising out of the unauthorized alteration by an unknown third party of two airline tickets that were purchased by the defendant passenger. The first issue addressed here concerns the rights which an innocent purchaser possesses upon purchase of airline tickets that have been previously altered. The second question is whether an estoppel may be raised against the airline due to its failure to detect these alterations at a reasonable point in time, i.e., confirmation or boarding of the flight.
The essential facts are as follows:
The plaintiff Swiss Air commenced this action for $2,000 representing the alleged difference between the amount received by it for two airline tickets purchased for travel within Switzerland, and the fair and reasonable value for air travel for which the tickets were used after alteration (a round-trip flight from Geneva to New York and back).
*130 Initially, the two tickets (Nos. 426 and 427), were purchased from a travel agent in New York City for passage on Swiss Air between Geneva and Basel. The total sum paid by that purchaser for the tickets was $200. The passengers’ names and flight destination on each of the tickets were later altered.
The defendant, Gale D. Benn, claims that he purchased the tickets, at $750 per ticket, from a Mr. Joseph Leva whom he believed to be a travel agent. Prior to the flight he brought the tickets to Swiss Air’s New York office at which point Swiss Air personnel validated the tickets and confirmed the reservations.
The airline does not contest that it confirmed and honored Mr. Benn’s airline tickets and permitted him to fly on the transatlantic flight in question.
According to the testimony of the manager of the airline credit and management department, the airline’s computer system is unable to detect changes in sales and flight coupons at the time of flight confirmation and boarding because its reservation computer is not tied into its sales computer. The tickets, when purchased from the travel agency, are made up of four parts which are all completed at one time. Each part is then distributed to the proper parties: the travel agent keeps one, sends the other to the airline and gives the flight coupons to the purchaser. It is the airline’s position that alterations such as this can only be detected at' a time subsequent to the flight when the component parts of the ticket are compared. It was only after a comparison of the auditor’s coupon to the flight coupon that the airline detected the alteration and requested correct payment from Mr. Benn.
The court today finds itself in the difficult position of having to choose where to place the risk of loss between two apparently innocent parties — the airline or the innocent purchaser who was misled by an unknown third party into buying items that were fraudulently altered.
Just as a ticket for passage upon a railroad or a steamship or other common carrier is classified as a contract, so too is an airline ticket. (5 ALR Fed 394.)
The names on the tickets as well as the travel date, flight destination and price of air fare were all altered. An *131 agreement may be deemed terminated or vitiated where it has been materially altered. (Gleason v Hamilton, 138 NY 353; Phalanx Corp. v Philite Radiant, 19 AD2d 515.) Generally, any alteration of an instrument is material which destroys the identity of the instrument or of the contract evidenced thereby, or which so changes its terms as to give it a different legal effect from that which it originally had, and thus works some change in the rights, obligations, interest or relations of the parties (3 NY Jur, Alteration of Instruments, § 4).
The alterations that occurred in this case affected both the rights and obligations of the airline and passengers here and are, without question, material. Where a material provision of an agreement has been altered willfully and maliciously the entire agreement may be terminated. (Mike’s Merry Go Round Rest v Lincoln Serv., 29 Misc 2d 176.)
Nevertheless, the defendant contends that he has acquired superior rights in the tickets than his vendor possessed. He claims that these rights exist either as a result of the doctrine of bona fide purchaser for value or that of holder in due course. Plaintiff claims that neither the bona fide purchaser rule nor the rule regarding holders in due course is applicable here and, as a result, defendant could derive no greater rights in the tickets than were possessed by his transferor. I agree. The defendant’s contention therefore fails.
The fact that the transferee in this case would otherwise meet the requirements of a bona fide purchaser for value, i.e., he has taken the ticket in good faith, for reasonable value, without notice of defects, is not enough to confer upon him better rights than those possessed by the transferor because airline tickets are not “goods” as defined by section 2-105 of the Uniform Commercial Code and are therefore not within the realm of protection of section 2-403 of the Uniform Commercial Code.
Additionally, the defendant does not qualify as a holder in due course of the tickets. He is therefore not entitled to claim pursuant to article 3 of the Uniform Commercial Code, that he took the tickets free from all claims or defenses of any party to the tickets with whom he has not *132 dealt (State Bank v Central Mercantile Bank, 248 NY 428; 11 Syracuse L Rev 13, 21) because the tickets do not satisfy the requirements of negotiability. It is clear that an airline ticket is not a negotiable instrument under section 3-104 of the Uniform Commercial Code, which requires that “(1) [a]ny writing to be a negotiable instrument within this Article must (a) be signed by the maker or drawer; and (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article; and (c) be payable on demand or at a definite time; and (d) be payable to order or to bearer.”
The defendant is precluded from claiming the benefit of either of the doctrines asserted here, that of bona fide purchaser or holder in due course. Both these doctrines are exceptions to the common-law rule applicable here: that a purchaser can acquire no better title than that of his vendor. (See 6 NY Jur 2d, Assignments, § 49.) Thus, an assignee takes only such rights or title as the assignor possessed, and ordinarily takes title subject to all equities and defenses which could be urged against his assignor. (Id.) Accordingly, Mr. Benn acquired no better rights to the airline tickets than his assignor possessed. Thus, despite the fact that he paid $750 per ticket, at most, all Mr. Benn could have acquired were two tickets for travel between Geneva and Basel or a $200 refund per ticket on a quantum meruit basis from the airline which was the price originally paid for these tickets.
The defendant nevertheless argues that to permit recovery here in the plaintiff’s favor would be inequitable. Specifically, it is defendant’s contention that, in light of the circumstances of this case, Swiss Air should be equitably estopped from suing the defendant for the difference between the amount paid by the initial purchaser and the price of the tickets as altered and actually used by him.
“Equitable estoppel or estoppel in pais is the principle by which a party is absolutely precluded, both at law and in equity, from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the *133 true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion were allowed.” (21 NY Jur, Estoppel, Ratification, and Waiver, § 15.)
As stated previously, the airline honored the defendant’s tickets at each point of his journey. The defect was not detected by the airline until many months after the defendant had completed his entire trip when they compared the auditor’s coupon to the flight coupon. It is the airline’s position that their actions were diligent because, due to the nature of their computer system, irregularities, such as the one found here, could not be detected any earlier. I reject the airline’s contention.
Airlines cannot create a situation which allows travel by an innocent passenger on a particular flight, and then, at a later point, expect to be paid when they discover that as a result of their own oversight, they have improperly permitted passage. Furthermore, the inability of the airline to cross-reference flight and sales coupons before and/or during the contemplated travel may encourage the very kind of ticket alteration that occurred in this case. It is the equitable rule that when one of two innocent parties must suffer loss by reason of the fraud or deceit of another, the loss shall fall upon him by whose act or omission the wrongdoer has been enabled to commit the fraud. (Bernard v Campbell, 55 NY 456; Swiss Credit Bank v Chemical Bank, 422 F Supp 1305, 1309.)
Plaintiff could have prevented the passengers from using altered tickets by maintaining a system capable of confirming which passengers are scheduled for a particular flight. In light of the advanced computer technology available today, this is not an unreasonable burden to place on the plaintiff. The airline should be the one to bear the loss of the difference in air fare, because they are in a better position to both prevent and discover any alterations in their tickets.
I do not recognize Swiss Air’s reliance on its computer system as a legally cognizable defense. Had Swiss Air been properly equipped with a more sophisticated computer *134 system, it could have promptly discovered the irregularity of the defendant’s ticket. It then would have had a variety of remedies available to it immediately. It could have demanded payment from the defendant before he boarded the plane or denied passage for refusal to pay. However, the airline confirmed passage at each and every point of the flight. They cannot now expect to be compensated for failing to detect ticket alterations from a passenger who in good faith, without notice of the alterations, used the tickets and relied on the airline’s confirmation of the tickets as an indication that the tickets were proper.
I hold that an airline owes a duty to use reasonable precautions when inspecting and confirming a passenger’s flight ticket. The airline has failed to meet this obligation and accordingly is estopped to deny the validity of the defendant’s tickets.
Judgment for the defendant.