**In re AIR FLORIDA SYSTEM INC. and Air Florida, Inc., Debtors.**

**GPA CORPORATION, GPA Leasing (NA) N.V., GPA Limited and the United States of America, on Behalf of its Agency, the Federal Aviation Administration, Plaintiffs,**

v.

**AIR FLORIDA, INC., Defendant, and**

**Official Statutory Creditors Committee, Intervenor.**

**Bankruptcy No. 84–01223–BKC–SMW. Adv. No. 84–0704–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

May 28, 1985.

Robert A. Greenspon, Robinson & Cole, Stamford, Conn., for plaintiffs GPA Corp., GPA Leasing (NA) N.V. and GPA Group Limited.

J. Christopher Kohn, Charles L. Schlumberger, Daniel E. Loeb, Civil Div., Dept. of Justice, Washington, D.C., for U.S. (Federal Aviation Admin.; Richard M. Lorr, Office of General Counsel, Dept. of Transp., Washington, D.C., of counsel.

John K. Olson, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Fla., for Air Florida, Inc.

Arnold D. Schatzman, Schatzman & Schatzman, Coral Gables, Fla., for Official Statutory Creditors Committee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS MATTER having come before the Court for trial on March 15 and April 8, 1985 in the above-styled adversary case, the Court having heard the testimony of the witnesses, having examined the evidence presented and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law.

This adversary proceeding raises the question of whether security interests of the plaintiffs in Air Florida's accounts and accounts receivable ("accounts") and pro-

ceeds thereof include certain funds recovered by Air Florida as a result of its operations in Jamaica and moneys owed to Air Florida through interline ticket transactions.

The record adequately reflects that the plaintiffs have duly perfected security interests in all of Air Florida's accounts. Counsel for Air Florida conceded at trial that the debtor does not dispute the validity of plaintiffs' security interests; in fact Air Florida had agreed earlier to the entry by this Court of orders abandoning all trade and non-trade accounts to the plaintiffs on September 14, 1984. Rather, Air Florida and the Official Statutory Creditors' Committee argue that the funds in dispute are not the proceeds of accounts.

■ In November 1984, plaintiffs discovered that Air Florida had recovered approximately $227,000 through applications to the Bank of Jamaica which Air Florida contends is the property of the estate and not subject to the September orders abandoning accounts to plaintiffs. When Air Florida refused to remit this money to plaintiffs, this adversary proceeding was commenced, in which plaintiffs sought recovery of the funds and an order directing Air Florida to deposit the funds and any other similar moneys thereafter collected into a segregated, interest bearing account pending the resolution of this controversy. Such an order was entered by this Court on November 27, 1984. A second payment from Jamaica in the approximate amount of $264,000 was received by Air Florida in February, 1985; the total received from Jamaica at issue herein is $491,000.

The original source of the moneys was established at trial as the sale of airline tickets by Air Florida and through its general sales agent in Jamaica, Air Florida (Jamaica) Ltd. ("AFJ"). AFJ served as Air Florida's agent in selling Air Florida ticket stock, primarily through travel agents located in Jamaica, and in collecting the proceeds of those sales and depositing them into a Jamaican bank account. AFJ had no legal or contractual authority to make any payments on behalf of Air Florida in Jamai-

ca. After AFJ's local expenses and commissions were paid, the remainder of the money in the account was remitted to Air Florida. Because this money was in Jamaican currency, the funds had to be converted into United States currency through applications to the Jamaican Government.

During various periods prior to June 17, 1983 and between June 17, 1983 and November 24, 1983, various airlines, including Air Florida, made applications to the Jamaican Government for conversion of funds belonging to the airlines from Jamaican currency to United States currency. The Jamaican Government allowed these repatriations at official exchange rates through the Jamaican central bank; the official rates overstated the value of Jamaican dollars. Various U.S. airlines serving Jamaica, including Air Florida, complained to the United States Government about the official Jamaican exchange rates which obviously discouraged the airlines from doing business in Jamaica. As a result, negotiations between the United States and Jamaica governments took place and in January, 1984, pursuant to a Memorandum of Consultations, the Jamaican Government agreed to recompute the 1983 currency exchange rates for U.S. flag carriers. Under the Memorandum of Consultations, affected airlines could apply to the Jamaican Government for additional foreign exchange increments on moneys repatriated during the periods mentioned above. As a result, Air Florida became entitled to receive the additional amounts at issue herein.

Although Air Florida and the intervenor contend that this money does not belong to plaintiffs because it is not the proceeds of an account, this Court disagrees.

Air Florida argues that the $491,000 recovered arose solely under the Memorandum of Consultations. It is claimed that the funds were not included in Air Florida's accounts and did not relate to the sale or lease of goods or services rendered by the airline but instead arose from the "voluntary repatriation by Air Florida of some of its own funds during 1983 and the decision

by the Jamaican Government that its own interests were better served by retroactively allowing airlines to repatriate funds at a different exchange rate."

This argument ignores the clear and uncontroverted evidence that the original moneys deposited in Air Florida's Jamaican bank account existed as a result of the sale of airline tickets by Air Florida in Jamaica. The funds at issue here are merely a mathematical adjustment pursuant to the Memorandum of Consultations of moneys received by Air Florida in Jamaican currency for the sale of airline tickets. Put another way, but for the sale of airline tickets there would have been no Jamaican dollars to recompute according to the Memorandum of Consultations into U.S. currency.

Under § 679.106, Florida Statutes, and § 42a–9–106 of the Connecticut General Statutes [1], an account is defined as:

> any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not is has been earned by performance.

Simply put, the Jamaican moneys are payments to Air Florida as a result of the services rendered by the airline in the transportation of airline passengers. Accordingly, the moneys are the proceeds of accounts as defined by § 9–106 of the Uniform Commercial Code, and are therefore subject to plaintiffs perfected security interests and the orders of September 14, 1984 abandoning those accounts to plaintiffs.

Several courts have decided that the sale of a ticket creates an account receivable in favor of the seller. *Klinger v. Pocono International Raceway, Inc.,* 289 Pa.Super. 484, 433 A.2d 1357, 1362 (1981); *National Bank of Commerce of Birmingham v. Alabama Football, Inc.,* 20 U.C.C. Rep.Serv. 751, 757–758 (N.D.Ala.1976). This Court believes that the decision in *In re Cooper,* 2 B.R. 188, 193–95 (Bankr.S.D. Tex.1980) is on point. There, the Court held that the sales of concert tickets gave rise to accounts receivable subject to a security agreement. The Court also held that "authorized payments made to an agent within the scope of employment would be the same as payments made directly to the principal." In conformity with generally recognized agency principles, the fact that the airline ticket sales were collected by Air Florida's agent in Jamaica and not by Air Florida does not affect the fact that the proceeds of the ticket sales are proceeds of accounts of the debtor.

■ The Court also finds unpersuasive Air Florida's arguments that the plaintiffs' interest in the funds is limited by § 679.-306(4), Florida Statutes, (UCC § 9–306(4), generally) or by operation of 11 U.S.C. § 552(a). Air Florida has ignored 11 U.S.C. § 552(b), which makes it clear that proceeds of pre-filing accounts received by the estate after filing would still be subject to plaintiffs' security interests. Furthermore, § 9–306(4) concerns "commingled" funds, and, in fact, funds commingled prior to the filing. See *In re SMS, Inc.,* 15 B.R. 496, 500 (Bankr.D.Kan.1981). The Court finds that the Jamaican funds were not "commingled", and in any event, certainly not prior to filing.

■ Air Florida further contends that moneys due the airline under interline agreements with other airlines are moneys due on "instruments," not accounts. § 679.105(1)(i), Florida Statutes, (UCC § 9–105(i), generally,) defines instruments as:

> a negotiable instrument (defined in § 673.104), or a security (defined in § 678.102), or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred

**1.** The GPA Corporation, GPA Leasing (NA) N.V. and GPA Group Limited ("GPA") security agreements are governed by Connecticut law, whereas the FAA security agreement is governed by Florida law. As the provisions of the Uniform Commercial Code relevant to the issues herein are the same in Connecticut and Florida, citations will be to the Florida Uniform Commercial Code.

by delivery with any necessary endorsement or assignment.

This definition makes clear that the characteristics which make a writing an "instrument" are the evidencing of a right to payment of money and the ability to transfer by delivery in the ordinary course of business. It is clear by the testimony of Air Florida's own witnesses that airline tickets do not evidence a right to payment of money and are not assignable.

Examples of writings which courts have held to be instruments include: stock certificates, certificates of deposit, debentures, municipal bonds, and ownership interest in a cooperative apartment stock and lease, a note and deed of trust, and money. See *In re Milam*, 4 B.R. 621 (Bankr.M.D. Ga.1980) (stock certificates); *Citizen's National Bank of Orlando v. Bornstein*, 374 So.2d 6 (Fla.1979) (certificate of deposit which even if non-negotiable evidences the right to payment of money and is transferrable); *Allegaert v. Chemical Bank*, 657 F.2d 495 (2nd Cir.1980) (a debenture is an "instrument" since it is a writing that evidences a right to the payment of money and is of a type which in the ordinary course of business is transferrable by delivery with any necessary endorsement or assignment); *In re H.J. Otten Company, Inc.*, 8 B.R. 781 (W.D.N.Y.1981) (municipal bonds); *Superior Financial Corp. v. Haskell*, 556 F.Supp. 199 (S.D.N.Y.1983) (ownership interest in a cooperative apartment stock and lease).

There are several decisions regarding the categorization of airline tickets under the federal statutes prescribing transportation of forged or counterfeit securities. These cases hold that "airline tickets are not securities." *See United States v. Jones*, 450 F.2d 523 (5th Cir.1971); *United States v. Gallipoli*, 599 F.2d 100, 102 (5th Cir.1979); *United States v. Johnson*, 700 F.2d 163, 169 (5th Cir.1983).

*Matter of Transport Clearings-Midwest, Inc.*, 26 B.R. 282 (Bankr.W.D.Mo.1982), provides an analysis of the differences between an instrument and an account. There the Court held that a freight bill could not be characterized as a negotiable instrument or a security or a security agreement because it does not constitute evidence of a right to a payment of money. A freight bill could not meet the Uniform Commercial Code standards of instrument since the right to payment for freight charges existed independently of the bill. Similarly, an airline ticket does not fall within the definition of instrument. At least one Court has explained that like railroad, steamship, or other common tickets an airline ticket is properly classified as a contract. *See Swiss Air Transport Co. v. Benn*, 121 Misc.2d 129, 467 N.Y.S.2d 341 (C.L.Ct.N.Y.1983).

It should be noted that if Air Florida's argument were found to be persuasive, it would have been impossible for GPA and the FAA to perfect their security interest in the proceeds of airline tickets. Under UCC § 9–304, a security interest in instruments can only be perfected by the secured party's taking possession of the instrument. This would mean that GPA and the FAA would have had to take possession of all of the ticket stock of Air Florida, which would be impossible. Clearly, any bank or lender financing an airline would be unable to "perfect" its security interest if tickets are instruments, and since the bulk of airline revenues are generated by the sale of airline tickets, airline financings would stop dead in their tracks.

■ Even if this court determined that plaintiffs' security interest did not attach to these funds, this court finds and determines that the plaintiffs are entitled to this money under equitable principles. At trial, plaintiffs produced unrebutted evidence clearly establishing that at the time Air Florida pledged its accounts to them, the airline represented and intended that the plaintiffs have security interest in moneys owed Air Florida from its Jamaican sales agent. The unrebutted testimony of Air Florida's former president, chief executive officer and chairman of the board as well as its former treasurer established that Air Florida had represented to plaintiffs the value of its accounts to be $24 or $25

million. At the request of plaintiffs the airline confirmed this in writing by attaching copies of a detailed schedule of its accounts, which schedules included accounts from the general sales agent in Jamaica and interline ticket transactions. It is uncontroverted in the record that GPA and the FAA affirmatively relied on these representations.

Not only did Air Florida represent that the proceeds of tickets sales in Jamaica were accounts to the plaintiffs, but also in essence made the same representations to this Court. From the very beginning of this reorganization, the debtor has used the same valuation of accounts set forth in the aging schedules provided plaintiffs to demonstrate that plaintiffs were "adequately protected" in order to enable Air Florida to use cash collateral.

This Court and others have held that under similar circumstances the debtor should be estopped from making a claim that is inconsistent with its actions previously. See *In re Holiday Isles, Ltd.,* 29 B.R. 827 (Bankr.S.D.Fla.1983). See also *In re Eden Associates,* 13 B.R. 578, 582 (Bankr.S.D.N.Y.1981), *In re Vaniman International, Inc.,* 22 B.R. 166, 194 (Bankr. E.D.N.Y.1982), *In re Lefevre,* 27 B.R. 40, 43 (Bankr.D.Vt.1983), *Cole v. Pioneer Valley Credit Union,* 13 B.R. 258, 259 (Bankr. D.Mass.1981), *In re Chase,* 37 B.R. 345, 347 (Bankr.D.Vt.1983), *United Virginia Bank v. B.F. Saul Real Estate,* 641 F.2d 185, 189–90 (4th Cir.1981).

Applying equitable principles, therefore, plaintiffs must prevail. In *Matter of Jet Executive International Inc.,* 27 B.R. 61 (Bankr.S.D.Fla.1983), and in *In re Gilman,* 31 B.R. 930 (Bankr.S.D.Fla.1983) this Court outlined the elements for the imposition of an equitable lien, which include

> ... a two-prong *disjunctive* test, which if satisfied by a creditor, generally warrants the imposition of an equitable lien upon the debtor's property. The first prong is satisfied when it is found that a written contract shows an intention to charge some particular property with a debt or obligation ... The second prong

of the disjunctive test imposes an equitable lien where mistake or material misrepresentation necessitates equitable relief based on unjust enrichment or general considerations or right and justice.

In this case, both tests are met. The security agreements relied on by the FAA and GPA pledge security interests in *all* of Air Florida's accounts. The documents submitted by Air Florida established that Air Florida intended to charge the moneys from Jamaica and interline ticket sales transactions with the security interest in accounts. In addition, Air Florida undeniably represented to the plaintiffs that their security interests included proceeds from Jamaica and moneys owed to Air Florida on tickets issued by other airlines. Accordingly, plaintiffs are entitled to the imposition of an equitable lien on the Jamaican moneys as well as on funds owed to Air Florida stemming from interline ticket sales.

### CONCLUSION

Applying the law, the Uniform Commercial Code, the September 14, 1984 orders, and appropriate equitable principles, the Court finds that the plaintiffs have met their burden of proof that the $491,000 received from Jamaica, plus interest, belongs to the plaintiffs and not the debtor. The Court further finds that, under the Uniform Commercial Code, interline tickets are not instruments and therefore moneys owed from interline ticket sales are accounts or proceeds thereof. Alternatively, for the reasons previously discussed, the plaintiffs are entitled to the imposition of an equitable lien upon interline ticket sales proceeds and the Jamaican funds.

A separate judgment will enter for the plaintiffs in conformity with these Findings of Fact and Conclusions of Law.