UNITED STATES of America,
Plaintiff-Appellee,

v.

William J. JOHNSON,
Defendant-Appellant.

No. 82–1136.

United States Court of Appeals,
Fifth Circuit.

Oct. 25, 1983.

Leo J. Hoffman, Court Appointed, Dallas, Tex., for defendant-appellant.

James A. Rolfe, U.S. Atty., John Mitchell Nevins, Asst. U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, BROWN, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, GARWOOD, JOLLY and HIGGINBOTHAM, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

We granted rehearing en banc to decide whether a district court may, in a criminal prosecution for interstate transportation of a falsely made security, instruct the jury that a particular document is a security as a matter of law. We hold that, although it is the court's duty to instruct the jury on the legal principles applicable to the determination of that question, it is the jury's exclusive province to apply the law to the facts and determine whether the document is a security. Accordingly, we reverse the defendant's conviction for violating 18 U.S.C. § 2314 (1976). We affirm his conviction for violating 18 U.S.C. § 1343 (1976) because that charge did not require proof that the document was a security.

I.

In 1977 William J. Johnson, the defendant, joined in promoting the formation of a California corporation, International Vaults, Ltd. (International), to engage in trading gold and other precious metals. Johnson left the company in 1978 because he was having marital difficulties. Thereafter, between April and November 1980, International offered investors "promissory certificates," advertising a return of 8 percent monthly. It planned to use the funds raised to buy gold directly from Alaskan miners for resale in the commercial market, hoping that it could buy and sell rapidly enough to net revenues sufficient both to pay investors the grand return it promised them and to make a profit. The certificates were not registered as securities with the state or federal government.

In mid-November 1980, International stopped selling the certificates because its attorney advised the company that it might be violating federal securities law. The lawyer advised International to undertake a public stock offering, which required the company to prepare a certified financial statement. International's officers, therefore, hired an accountant and an independent auditor to verify the company's assets. At that time or soon thereafter, the California Department of Corporations asked International to suspend operations pending an investigation of the corporation's compliance with state securities laws.

One of the corporation's major assets was an unpaid promissory note for $8 million made by its agent, Eastman, who had been buying the Alaskan gold. Because Eastman could not be located, the verification process fell behind schedule and management's concern about the Department of Corporations' investigation heightened. They hired Johnson to verify the company's assets, satisfy state officials, and enable International to resume business.

Johnson's first mission was to obtain an asset worth $8 million to substantiate International's net worth while it sought payment from Eastman on the promissory note. To this end, he travelled to Dallas to meet with William Brinlee, an acquaintance who dabbled in investments. Brinlee supplied Johnson with a document titled "Gold Certificate Contract," the full text of which is set forth in the margin, purporting to instruct that 17,000 ounces of gold held in a bonded warehouse be delivered to "Int. Vaults, Ltd./William J. Johnson." [1]

---

1. The document read:

GOLD CERTIFICATE CONTRACT
\* \* \* \* \* \*
Deliver to: Int. Vaults, Ltd/Wm. J. Johnson only—17,000—seventeen thousand—TROY OUNCES of GOLD on demand after—360—DAYS from the date hereon.
[Signed] R.C. Massner
I.M.F. Systems, Inc.
–CONDITIONS–

The original document did not state the price to be paid for the gold on delivery. Brinlee retained a duplicate on which Johnson had written: "To be paid in cash upon delivery of Gold." Johnson allegedly promised Brinlee that he would return the original certificate within three days and pay $75,000 for its use during that period.

Johnson travelled by plane from Dallas to California with the document. International's officers immediately presented it to the auditors, representing that the $8 million promissory note had been "retired" and that the Gold Certificate confirmed the existence of a corporate asset in that amount. The auditors attempted to verify the value of the certificate and, in the process, made telephone calls to Dallas. They were, however, unable to verify the existence of the gold the certificate represented, so they could not complete the audit.

Johnson, concerned at the suggestion that the certificate was "no good," returned to Dallas. He met with Brinlee and returned to California with a "bill of sale" for one million tons of coal. The auditors again made inquiries but could not verify the value of this asset. In short order, International declared bankruptcy.

1. GOLD shall be dleivered [sic] in bars of one thousand Trou [sic] ounces, plus or minus five (5) percent and shall be 999.5 fine GOLD or better.
2. Delivery shall be made to any bank or bonded warehouse in Dallas, Texas, for the account of the purchaser.
3. No interest shall be paid on this certificate.
4. This certificate can be transferred only on the books of I.M.F. Systems, Inc. by written authorization of I.M.F. Systems, Inc. to the Transfer Agent. This certificate cannot be divided or sold in fractional shares.
5. This certificate shall be redeemable in GOLD as specified in paragraph one, and the purchaser acquires no right or rights to any ore, mines, mineral deposits, smelters, processes, formulas, trade secrets, or operations, of any nature belonging to I.M.F. Systems, Inc. and I.M.F. Systems Inc. shall not be obligated to deliver GOLD from any particular mine, or refined by any specific process.
6. This certificate shall not be sold, transferred, traded, or assigned as collateral.
7. Purchaser agrees that this certificate shall be for his own investment account and not for resale.

The federal government then charged Johnson with two counts of fraud. Count One alleged that Johnson "knowingly, wilfully and with unlawful and fraudulent intent, did transport and cause to be transported in interstate commerce . . . a falsely made security, that is, a gold certificate contract . . . knowing such security to be falsely made. A violation of [18 U.S.C. §] 2314." Count Two charged that Johnson: "for the purpose of executing [a] scheme [to defraud by means of false and fraudulent pretenses] . . . knowingly and willfully caused to be transmitted in interstate commerce, wire signals, to wit: a long distance telephone conversation. . . . A violation of [18 U.S.C. §] 1343."

One of Johnson's defenses to Count One was that the Gold Certificate Contract was not a security. The district judge instructed the jury that the prosecution had to prove as an essential element of the offense that Johnson carried a falsely made security in interstate commerce. However, he refused to submit to the jurors the question whether the Gold Certificate was such a security, instructing them that the certificate was a security as a matter of law.[2]

8. Owner shall surrender this certificate on or after the due date and sign a receipt for the amount specified herein. Delivery before the due date shall be at the option of I.M.F. Systems, Inc.
9. This certificate is backed by an original Bill of Sale and an original assigment [sic] of interest in a bonded warehouse receipt. These documents are on deposit with Security Trust Company of Dallas, Texas and shall be held by The Trust Company until this certificate is redeemed by delivery of the GOLD.
The Certificate was signed by Roy Massner, a founder of I.M.F. Systems, Inc., and by Johnson.

2. "You are instructed that the gold certificate contracts in this case are securities under the meaning of Title 18, United States Code, Section 2318." After the jury retired, Johnson's lawyer objected to the charge:

MR. HOFFMAN: Your Honor, we object to the instructions to the Jury that the gold certificate contract is a security.

. . . .

[THE COURT]: As I understand, your objection to the Charge is the court has instructed

The jury found Johnson guilty on both counts. The judge sentenced him to serve thirty months on the interstate transportation count and five years' probation on the wire signal count.

The panel opinion affirmed the judgment of conviction. 700 F.2d 163 (5th Cir.1983), *reh'g granted,* 700 F.2d at 181 (5th Cir.1983) (en banc).

## II.

By the time the Constitution was drafted, the institution of trial by jury in criminal cases had been in existence in England for several centuries.[3] It was guaranteed in the constitutions of each of the original thirteen states,[4] and was considered " 'part of that admirable common law which had fenced around and interposed barriers on every side against the approaches of arbitrary power.' "[5] The body of the Constitution itself commands that "the Trial of all Crimes, except in Cases of Impeachment, shall be by Jury." U.S. Const. art. III, § 2. The sixth amendment elaborates this assurance, guaranteeing the accused in all criminal prosecutions the right to a speedy and public trial by an impartial jury. These provisions "reflect a fundamental decision about the exercise of official power—a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges." *Duncan v. Louisiana,* 391 U.S. 145, 156, 88 S.Ct. 1444, 1451, 20 L.Ed.2d 491, 500 (1968).

■ The sixth amendment guarantees "a trial by jury as understood and applied at common law, and includes all the essential elements as they were recognized in this country and England when the Constitution was adopted...."[6] The test is not entirely historical, for our inquiries "must focus upon the function served by the jury in contemporary society."[7]

■ The fifth and fourteenth amendment guarantees of due process of law afford further guarantees to the accused. The due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."[8] This means that the prosecution must prove beyond a reasonable doubt the defendant's guilt of "ev-

the Jury that the gold contract in question is, in fact, a security and it's your contention that this is an issue of fact. Well, first your contention is that it is not a security as a matter of law.

MR. HOFFMAN: Yes, sir.

THE COURT: And that's one of the bases for your Judgment of Acquittal. Secondly, it's your contention and your objection to the Charge that at least it's a question of fact that the Jury should determine.

MR. HOFFMAN: Yes, sir.

THE COURT: And that the Jury should be instructed on a definition of a security and it should be left up to the Jury; is that correct?

MR. HOFFMAN: Yes, sir, that is our position.

THE COURT: I think it's clear from the record that that is what your position is. Is that all?

MR. HOFFMAN: Yes, sir.

THE COURT: All right, I'll overrule your objection and note your exception.

3. *See Duncan v. Louisiana,* 391 U.S. 145, 151, 88 S.Ct. 1444, 1448, 20 L.Ed.2d 491, 497 (1968).

4. *Id.* at 153, 88 S.Ct. at 1449, 20 L.Ed.2d at 498.

5. *Thompson v. Utah,* 170 U.S. 343, 349–350, 18 S.Ct. 620, 622, 42 L.Ed. 1061, 1066 (1898), (quoting 2 J. Story, Commentaries on the Constitution of the United States § 1779 (1833)).

6. *Patton v. United States,* 281 U.S. 276, 288, 50 S.Ct. 253, 254, 74 L.Ed. 854, 858 (1930).

7. *Apodaca v. Oregon,* 406 U.S. 404, 410, 92 S.Ct. 1628, 1632, 32 L.Ed.2d 184, 191 (1972) (plurality opinion). Thus, for example, neither a jury of twelve, *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) (six-member jury constitutional); *see Ballew v. Georgia,* 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978) (five-member jury unconstitutional); nor unanimity of verdict, *Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972); is essential, but the jury must be selected from a representative cross-section of the community. *Taylor v. Louisiana,* 419 U.S. 522, 527–28, 95 S.Ct. 692, 696, 42 L.Ed.2d 690, 696–97 (1975) (exclusion of women who do not file written declaration of willingness to serve unconstitutional).

8. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970).

ery element of the charged offense." [9] Therefore, "a judge may not direct a verdict of guilty no matter how conclusive the evidence." *Connecticut v. Johnson,* —— U.S. ——, ——, 103 S.Ct. 969, 976, 74 L.Ed.2d 823, 832 (1983) (plurality opinion) (quoting *United Brotherhood of Carpenters & Joiners v. United States,* 330 U.S. 395, 408, 67 S.Ct. 775, 782, 91 L.Ed. 973, 985 (1947)). The plurality opinion in *Connecticut v. Johnson,* rendered only months ago, reiterated the Court's "consistent" holding that a trial judge is prohibited from directing the jury to come forward with a verdict of conviction. *Johnson,* —— U.S. at ——, 103 S.Ct. at 976, 74 L.Ed.2d at 832 (plurality opinion).

### III.

The government argues that the judge in this case acted properly because the trial judge decides "questions of law" while the jury decides only "questions of fact." [10] This distinction is at best elusive.[11] There is no categorical distinction between "legal" and "factual" questions, for in every case application of a legal principle turns on the presence of particular facts.[12] A contemporary author has aptly explained why the "law" and "fact" distinction misses the mark in criminal trials.

There is considerable misunderstanding in the minds of the general public regarding provisions making a jury the judge of fact and not of law. This misunderstanding is attributable in large part to the inaccuracy of the general rule that juries decide *only* the facts. This is an inaccurate expression because it leaves the impression that juries are not judges of the law at any time or in any sense. Juries are always judges of the law in the sense that juries must pass on the manner and the extent in which the law expounded by the judge fits the facts brought out in the evidence. This process requires juries to perform the legal function of interpretation and application. In the absence of express authority, however, juries are not judges of the law in determining what principle of law is applicable to the evidence.

S. McCart, Trial by Jury 116–17 (1965) (emphasis in original). Hence, although attempting to separate "fact" from "law" may sometimes be useful, particularly when a statute or a federal rule turns on the differentiation, it is not the issue here. The issue is the role of the jury in the trial guaranteed to the accused.[13]

**9.** *Moore v. United States,* 429 U.S. 20, 22, 97 S.Ct. 29, 30, 50 L.Ed.2d 25, 28 (1976) (per curiam); *see Patterson v. New York,* 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281, 292 (1977) (state must prove "all of the elements included in the definition of the offense" charged beyond a reasonable doubt); *United States v. McClain,* 545 F.2d 988, 1004, *modified,* 551 F.2d 52 (5th Cir.1977) (per curiam). The Supreme Court has also phrased the test in terms of "every fact necessary to constitute the crime charged." *Mullaney v. Wilbur,* 421 U.S. 684, 685, 95 S.Ct. 1881, 1883, 44 L.Ed.2d 508, 511 (1975). In *Patterson,* however, the Court clarified *Mullaney,* stating: "*Mullaney* surely held that a State must prove every ingredient of the offense beyond a reasonable doubt...." 432 U.S. at 215, 97 S.Ct. at 2329, 53 L.Ed.2d at 295.

**10.** *E.g., United States v. Johnson,* 700 F.2d at 186; *United States v. Guy,* 456 F.2d 1157, 1163 (8th Cir.), *cert. denied,* 409 U.S. 896, 93 S.Ct. 136, 34 L.Ed.2d 153 (1972).

**11.** *See Pullman-Standard v. Swint,* 456 U.S. 273, 288, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66,

79 (1982) ("vexing nature of the distinction between questions of fact and questions of law"); *Baumgartner v. United States,* 322 U.S. 665, 671, 64 S.Ct. 1240, 1244, 88 L.Ed. 1525, 1529 (1944) (distinction "often not illuminating" and "never self-executing").

**12.** *See Pullman-Standard,* 456 U.S. at 289, & n. 19, 102 S.Ct. at 1790 & n. 19, 72 L.Ed.2d at 80 & n. 19.

**13.** If it were appropriate to resolve this case on the "fact" and "law" distinction, we would reach the same result. The definition of a security is a matter of law. It is the judge's duty to instruct the jury concerning that definition: the way in which a security is identified. Whether a particular piece of paper meets that definition, however, is for the jury to decide. Of course, the question whether a generic type of document, such as a traveler's check or an equipment lease, may come within the reach of the statute's prohibition is one of law. *See, e.g., United States v. Wexler,* 621 F.2d 1218 (2d Cir.) (equipment leases), *cert. denied,* 449 U.S. 841, 101 S.Ct. 119, 66 L.Ed.2d 48 (1980); *Unit-*

This difference in function between judge and jury has been long established. In the first jury trial conducted in the United States Supreme Court, Chief Justice Jay, after stating that the facts were undisputed and giving the Court's unanimous opinion about the law, nevertheless reminded the jurors:

[O]n questions of fact, it is the province of the jury, on questions of law, it is the province of the court, to decide. But it must be observed, that by the same law, which recognizes this reasonable distribution of jurisdiction, you have, nevertheless, a right to take upon yourselves to judge of both, and to determine the law as well as the fact in controversy.

*Georgia v. Brailsford,* 3 U.S. (3 Dall.) 1, 4, 1 L.Ed. 483, 484 (1794) (footnotes omitted) (civil case).

In 1835, Justice Story, sitting on circuit, affirmed that principle. Although he instructed that the jury "are no more judges of the law in a capital or other criminal case, upon the plea of not guilty, than they are in every civil case," he added, "In each of these cases, their verdict, when general, is necessarily compounded of law and of fact; and includes both. In each they must necessarily determine the law, as well as the fact." *United States v. Battiste,* 24 Fed. Cas. 1042, 1043 (C.C.D.Mass.1835) (No. 14,- 545).

Thus the jury may not be relegated to deciding only questions that the judge thinks to be "factual". Federal judges instruct the jury on the law applicable to the issues raised at trial. Fed.R.Crim.P. 30 permits any party to ask that the court "instruct the jury on the law as set forth in [written] requests." But the judge's role is simply to instruct the jury "on the law." Except in the rare case when, perhaps, a jury may still be instructed to return a special verdict,[14] the jury in a criminal trial does not answer interrogatories and it does not "find" facts.[15] It decides whether the defendant is guilty or not guilty.

## IV.

We have previously held that the judge may not decide whether a particular piece of paper purporting to be a contract is a security but must submit that issue to the jury. In *Roe v. United States,* 287 F.2d 435 (5th Cir.), *cert. denied,* 368 U.S. 824, 82 S.Ct. 43, 7 L.Ed.2d 29 (1961), the defendant was charged with illegal sale and delivery of unregistered securities based on his selling mineral leases. *See* 15 U.S.C. § 77e(a)(1), (2) (1976). We held that the determination whether the particular documents described as "mineral leases" were securities was for the jury, saying:

More than that, this being a criminal case . . . no fact, not even an undisputed fact, may be determined by the Judge. The plea of not guilty puts all in issue, even the most patent truths. In our federal system, the Trial Court may never instruct a verdict either in whole or in part. And yet, that is substantially what the Trial Judge did here on the crucial issue of whether these were investment contracts. He instructed them flatly and without equivocation that they were.

287 F.2d at 440 (citations and footnotes omitted). Other intermediate appellate decisions interpreting the jury's province do not, of course, speak with one voice. Some decisions support the conclusion we now reach.[16] Others support the contrary posi-

---

ed *States v. Gallipoli,* 599 F.2d 100 (5th Cir. 1979) (airline tickets); *United States v. Speidel,* 562 F.2d 1129 (8th Cir.1977) (quitclaim deeds), *cert. denied,* 435 U.S. 915, 98 S.Ct. 1468, 55 L.Ed.2d 505 (1978).

**14.** *See United States v. Desmond,* 670 F.2d 414 (3d Cir.1982).

**15.** *See generally,* Morgan, *A Brief History of Special Verdicts and Special Interrogatories,* 32 Yale L.J. 575 (1922).

**16.** *See United States v. Heller,* 635 F.2d 848, 856–57 (Em.App.1980) (court could not instruct jury that comparability of outlet had been established as a matter of law); *United States v. Benedetto,* 558 F.2d 171, 176–77 (3d Cir.1977) (court could not instruct jury that loans were "loanshark loans" as a matter of law); *Greenfield v. United States,* 341 F.2d 411, 412–13 (D.C.Cir.1964) (per curiam) (court could not instruct jury that pop bottle was dangerous weapon as a matter of law); *DeCecco v. United States,* 338 F.2d 797, 798 (1st Cir.1964) (court

tion.[17] Discord in the precedents provides all the more reason to look to principle. And the fundamental and "elementary"[18] principles involved in this case are that the government must prove every element of the crime beyond a reasonable doubt and that, in criminal cases, the court simply may not direct a verdict on any issue.

The essential elements of the crime Johnson was accused of in Count One are that he (1) transported in interstate commerce (2) a security (3) that was falsely made (4) knowing that it was falsely made (5) with unlawful or fraudulent intent. *See* 18 U.S.C. § 2314. The district judge was no more entitled to refuse to allow the jury to decide whether the Gold Certificate was a security than he would have been permitted to refuse to charge on whether the Certificate was falsely made or whether Johnson acted knowingly. Knowledge that the Gold Certificate was false or forged was, of course, also an essential element of the crime. But submission of this element to the jury does not excuse the failure to submit a different element: whether, regardless of Johnson's subjective belief or knowledge, the Gold Certificate was a security.

The Certificate purports to be a promise to deliver 17,000 troy ounces—a quantity equivalent to 1,411 troy pounds—of 999.5 fine gold for an unspecified price. It states expressly that it is neither negotiable nor usable as collateral. The jurors might have decided that this self-laudatory document was literally not worth the paper on which it was printed and was not a security at all.[19] They were not permitted to do that, however, because the judge told them that the certificate was a security and also instructed them: "You have no right to disregard or to give special attention to any one instruction, *or to question the wisdom or the correctness of any rule that I may state to you. That is, you must not substitute or follow your own notion or opinion as to what the law is or ought to be.*" (emphasis added).

To the principle that the judge must submit every essential element of the offense to the jury there are two historical exceptions. Over a half a century ago, the Supreme Court held that a defendant indicted for contempt of Congress by refusing to answer questions put to him was not entitled to have the jury decide whether the questions were pertinent to any inquiry the congressional committee was authorized to make. "The question of pertinency," the Court said in *Sinclair v. United States,* 279

---

could not instruct jury that defendant had failed to pay wagering tax as a matter of law).

**17.** *See United States v. Guy,* 456 F.2d 1157 (8th Cir.) (obligations of the United States as a matter of law), *cert. denied,* 409 U.S. 896, 93 S.Ct. 136, 34 L.Ed.2d 153 (1972); *United States v. Morris,* 451 F.2d 969, 972–73 (8th Cir.1971) ("in federal custody" as a matter of law); *United States v. Briddle,* 443 F.2d 443, 447 (8th Cir.) (property of the United States as a matter of law), *cert. denied,* 404 U.S. 942, 92 S.Ct. 291, 30 L.Ed.2d 256 (1971); *United States v. Jackson,* 436 F.2d 39, 41–42 (9th Cir.1970) (government property as a matter of law), *cert. denied,* 403 U.S. 906, 91 S.Ct. 2209, 29 L.Ed.2d 682 (1971); *United States v. Parisi,* 365 F.2d 601 (6th Cir. 1966) (bonded warehouse as a matter of law), *vacated on other grounds sub nom. O'Brien v. United States,* 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967); *Guy v. United States,* 336 F.2d 595, 597 (4th Cir.1964) (per curiam) (apparatus was a still as a matter of law).

**18.** *Moore,* 429 U.S. at 22, 97 S.Ct. at 30, 50 L.Ed.2d at 28.

**19.** A security is:

[A]ny note, stock certificate, bond, debenture, check, draft, warrant, traveler's check, letter of credit, warehouse receipt, negotiable bill of lading, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate; certificate of interest in property, tangible or intangible; instrument or document or writing evidencing ownership of goods, wares, and merchandise, or transferring or assigning any right, title, or interest in or to goods, wares, and merchandise; or, in general, any instrument commonly known as a "security", or any certificate or interest or participation in, temporary or interim certificate for, receipt for, warrant, or right to subscribe to or purchase any of the foregoing, or any forged, counterfeited, or spurious representation of any of the foregoing.

18 U.S.C. § 2311 (1976).

U.S. 263, 298, 49 S.Ct. 268, 273, 73 L.Ed. 692, 700 (1929), "was rightly decided by the [district] court as one of law. It did not depend on the probative value of evidence. That question may be likened to those concerning relevancy at the trial of issues in court, and it is not essentially different from the question as to materiality of false testimony charged as perjury in prosecutions for that crime."

Despite the Supreme Court's statement that "[t]he reasons for holding relevancy and materiality to be questions of law ... apply with equal force to the determination of pertinency ...." *id.* at 299, 49 S.Ct. at 273, 73 L.Ed. at 700, the comparability of a ruling on the admissibility of evidence, which is the sole question when relevancy is examined, and determining an issue upon which guilt or innocence depends is not immediately obvious to us. We are, therefore, reluctant to expand *Sinclair*'s sweep at the expense of the accused's right to interpose the jury between himself and the judge.

Moreover, there is a distinction between deciding pertinency and materiality and deciding whether a tangible document or thing meets a statutory definition. The former inquiry turns primarily on reason. The latter depends upon the probative value of evidence even when the evidence

seems so clear as to leave no room for fool's questions. Thus it is a jury question whether the prosecution has proved that a pistol introduced in evidence is a firearm or that an automobile identified by a witness is a motor vehicle even though few would seriously debate the contrary. Similarly, it cannot be determined whether something called a Gold Certificate is a security without some evidence: the introduction of the document and testimony about the significance of its contents. Indeed the parties offered and the court admitted conflicting testimony of expert witnesses concerning the nature of the document.

For these reasons, both historical and functional, we do not by this opinion erode either the ruling in *Sinclair* or our many decisions that follow its dicta by holding that the materiality of false statements is a question for the court.[20] We merely refuse to extend the exception *Sinclair* recognized.

### V.

The judge's duty to instruct the jury and to submit to it the determination of guilt or innocence does not deprive him of his common-law power to comment on the evidence. We have consistently held that it is not error for judges to guide jurors in their deliberations by remarking on the evidence.

---

**20.** *See, e.g., United States v. Ackerman,* 704 F.2d 1344 (5th Cir.1983) (false customs declaration); *United States v. Howton,* 688 F.2d 272 (5th Cir.1982) (false testimony to grand jury); *United States v. Thompson,* 637 F.2d 267 (5th Cir.1981) (perjury); *United States v. Nixon,* 634 F.2d 306 (5th Cir.) (same), *cert. denied,* 454 U.S. 828, 102 S.Ct. 120, 70 L.Ed.2d 103 (1981); *United States v. Baker,* 626 F.2d 512, 514 n. 4 (5th Cir.1980) (false statements to government agency); *United States v. Bell,* 623 F.2d 1132 (5th Cir.1980) (false testimony to grand jury); *United States v. Lichenstein,* 610 F.2d 1272 (5th Cir.) (false statements to government agency), *cert. denied,* 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980); *United States v. Baptiste,* 608 F.2d 666 (5th Cir.1979) (false testimony to grand jury), *cert. denied,* 450 U.S. 1000, 101 S.Ct. 1707, 68 L.Ed.2d 202 (1981); *United States v. Cosby,* 601 F.2d 754 (5th Cir.1979) (same); *United States v. Schaffer,* 600 F.2d 1120 (5th Cir.1979) (false statements to government agency); *United States v. Taylor,* 574 F.2d 232 (5th Cir.) (false income tax returns),

*cert. denied,* 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978); *United States v. Haynes,* 573 F.2d 236 (5th Cir.) (same), *cert. denied,* 439 U.S. 850, 99 S.Ct. 154, 58 L.Ed.2d 153 (1978); *see generally* Annot., 60 A.L.R.Fed. 76 (1982); Annot., 49 A.L.R.Fed. 622 (1980 & Supp.1982). In *Blackmon v. United States,* 108 F.2d 572 (5th Cir.1940), however, we held that it was not error to submit the question of the materiality of perjured testimony to the jury, although it should have been decided by the trial judge. *Accord United States v. Moran,* 194 F.2d 623 (2d Cir.), *cert. denied,* 343 U.S. 965, 72 S.Ct. 1058, 96 L.Ed. 1362 (1952). In *Steadman v. SEC,* 603 F.2d 1126 (5th Cir.1979), *aff'd,* 450 U.S. 91, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981), we noted that the issue of materiality in failure-to-disclose cases is "a mixed question of law and fact and that divining the significance of the inferences a reasonable investor would draw from a given set of facts is peculiarly within the competence of the trier of fact." 603 F.2d at 1130 (citing *TSC Indus. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)).

But we have made clear that, "if the trial judge chooses to comment on the evidence, he *must* instruct the jury that they are not bound by his comments...." [21] In fact, the trial judge in this case did comment on the evidence, summarizing the various documents for the jury at the conclusion of one witness's testimony and then instructing the jurors: "[I]f the documents don't support ... my summary, disregard it." The judge must stop with commentary. He may not go so far in his remarks as to seriously prejudice the defendant.[22]

The jury's function is "the independent determination of the facts, *and* the *application of the law* ... to the facts ...." 2 C. Wright, Federal Practice and Procedure § 485, at 711 (2d ed. 1982) (emphasis added). Therefore, the jury charge should be a statement of the parties' claims, "the issues of fact that the jury must decide, *and the applicable law*...." *Id.* (emphasis added). "Put simply, the right to be tried by a jury of one's peers finally exacted from the king would be meaningless if the king's judges could call the turn." *United States v.*

*Spock,* 416 F.2d 165, 181 (1st Cir.1969) (footnote omitted). Johnson's judge called the turn; he became Johnson's jury on an essential element of the crime charged. He did not confine himself to instructing the jury about applicable legal principles or commenting on the evidence. He usurped the jury's province and applied the law to the facts as he understood them. What the state is barred from taking from the jury by autocratic command, its judges may not themselves arrogate.

■ The judgment of the district court entered on Count One is REVERSED and the case is REMANDED for a new trial on that Count.[23]

GARWOOD, Circuit Judge, concurring specially:

Though I generally agree with the principles set out in Judge Williams' cogent dissent, nevertheless, under the particular facts of this case, I concur in the majority's holding that the trial judge erred in instructing that as a matter of law the "Gold Certificate" was a security. The instrument so labeled was vague and ambiguous,

---

**21.** *United States v. Musgrave,* 444 F.2d 755, 762 (5th Cir.1971) (emphasis added), *cert. denied,* 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973), *cited with approval in United States v. Jacquillon,* 469 F.2d 380, 387 (5th Cir.1972), *cert. denied,* 410 U.S. 38, 93 S.Ct. 1400, 35 L.Ed.2d 604 (1973), *and in United States v. Fischer,* 531 F.2d 783, 787 n. 5 (5th Cir.1976), *and in United States v. Buchanan,* 585 F.2d 100, 102 (5th Cir.1978).

**22.** The seminal case stating this principle is *Quercia v. United States,* 289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed. 1321, 1325 (1933), in which the Supreme Court held: "It is within [the judge's] province ... to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence ...." The Court reversed the defendant's conviction because the trial judge's observation that a witness wiping his hands while testifying was almost always an indication of lying was "a sweeping denunciation repudiat[ing] as a lie all that the accused had said in his own behalf .... This was error and we cannot doubt that it was highly prejudicial." *Id.* at 472, 53 S.Ct. at 700, 77 L.Ed. at 1326. The Court added:

Nor do we think that the error was cured by the statement of the trial judge that his opinion of the evidence was not binding on the jury and that if they did not agree with it they should find the defendant not guilty.

His definite and concrete assertion of fact ... was not withdrawn. His characterization of the manner and testimony of the accused was of a sort most likely to remain firmly lodged in the memory of the jury and to excite a prejudice which would preclude a fair and dispassionate consideration of the evidence.

*Id. See Buchanan,* 585 F.2d at 102 (comments may not be "so highly prejudicial" that instruction cannot cure any error); *see also United States v. Dillon,* 446 F.2d 598, 600–01 (5th Cir.1971); *United States v. Dopf,* 434 F.2d 205, 207–09 (5th Cir.1970); *United States v. Garza,* 426 F.2d 949, 954 (5th Cir.1970).

**23.** We reinstate that portion of the panel opinion rejecting Johnson's other claims, 700 F.2d at 176–77, and, therefore, affirm the judgment of conviction on Count Two. We note that the judge instructed the jury on Count Two that the telephone calls were wire signals as a matter of law. This instruction was improper. However, Johnson did not request that the issue be submitted to the jury and did not on appeal assign the instruction as error. We, therefore, do not consider this question. *Cf. Commercial Standard Ins. Co. v. Bryce St. Apts.,* 703 F.2d 904, 908 (5th Cir.1983) (rule against raising issues for first time on appeal prevents "scanning the record for new theories").

experts differed as to its meaning, and facts outside the document, and inferences therefrom, were relevant to the determination of its status. *See Roe v. United States,* 287 F.2d 435, 438, 440 (5th Cir.), *cert. denied,* 368 U.S. 824, 82 S.Ct. 43, 7 L.Ed.2d 29 (1961). Indeed, the panel opinion relied in part, for its determination that the "Gold Certificate" was a security, on the economic reality of the transaction as evidenced by Johnson's promise to pay Brinlee for the use of the document. 700 F.2d 163 at 175, *reh'g granted,* 700 F.2d at 181 (5th Cir.1983) (en banc). However, in the instance, for example, of an instrument which on its face is unambiguously a promissory note, the trial judge, in a prosecution under 18 U.S.C. § 2314 alleging the instrument is a stolen security, should normally be entitled to instruct the jury that an instrument of that exact same tenor, if genuine and what it purports to be, is a security as a matter of law. Such an instruction, no matter how particularized, would not be an improper comment on the weight of the evidence, for it does not tell the jury *what facts* it should find, but only states the legal characterization of a particular state of facts which the jury may find from the evidence. As such it is an instruction on the law. As long as the instruction makes clear that the jury alone has the duty and power to determine the facts, that its duty is to follow the court's instructions on the law, and that it has the power to return a verdict of not guilty in any event, the proper and historic division of functions between judge and jury is faithfully maintained. For the judge to do more may invite tyranny; but to do less may invite chaos.

JERRE S. WILLIAMS, Circuit Judge, with whom CLARK, Chief Judge, GEE and E. GRADY JOLLY, Circuit Judges, join, dissenting:

I agree wholeheartedly with the principle that "the due process clause 'protects the accused against conviction except upon proof of every fact necessary to constitute the crime with which he is charged.' " [1] The majority of the Court however, moves far beyond this principle by interpreting it to take from the judge in a criminal trial his right and, indeed, his duty to instruct the jury on the law. The majority argues that a judge may not instruct the jury that a Gold Certificate such as was involved in this case falls within Congress' definition of a security as a matter of *law,* because that takes from the jury its right to decide whether every *fact* necessary to prove every element of an offense has been established. This argument is fundamentally flawed.

First, a jury's right to decide the facts is not infringed by a judge making a declaration of law. To hold otherwise ignores the distinction between questions of fact and law. Because the distinction between questions of fact and law may often be unclear, the majority notes that the jury has a right to pass on the law as well as on the facts. The jury's power to pass on the law, however, does not negate the judge's right and duty to declare the law. The majority nevertheless concludes that, in a criminal trial, the judge is preempted from making any positive statements about the law as it affects an element of the offense in other than broad definitional terms, lest the jury be preempted from deciding the facts. Since the dawn of the American legal tradition and the early days of the English common law it has been established, however, that the jury has the *power* to rule on what is the law, but not the *right* to do so. The jury's duty is to follow the law as pronounced by the judge. *Sparf v. United States,* 156 U.S. 51, 15 S.Ct. 73, 39 L.Ed. 343 (1895).[2] Thus Justice Story wrote in *United States v. Battiste,* 24 F.Cas. 1042, 1043 (C.C.

---

**1.** Majority opinion at 1320, citing *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970).

**2.** Writing for the Court in *Sparf v. United States,* 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895), Mr. Justice Harlan provides an exten-

sive discussion of whether historically the jury has been permitted to determine the law in a criminal case. He concludes that it has not.

D.Mass.1835) (No. 14,545), quoted also in the majority opinion:

> [T]he jury are no more judges of the law in a capital or other criminal case, upon the plea of not guilty, then they are in every civil case tried upon the general issue. In each of these cases, their verdict, when general, is necessarily compounded of law and of fact; and includes both. In each they must necessarily determine the law, as well as the fact. In each, they have the physical power to disregard the law, as laid down to them by the court. But I deny, that, in any case, civil or criminal, they have the moral right to decide the law according to their own notions, or pleasure. On the contrary, I hold it the most sacred constitutional right of every party accused of a crime, that the jury should respond as to the facts, and the court as to the law. It is the duty of the court to instruct the jury as to the law; and it is the duty of the jury to follow the law, as it is laid down by the court.

That the jury is bound to follow the judge's instructions is considered to be black letter law. *See* 3 L. Orfield, *Criminal Procedure Under the Federal Rules* § 23:26 (1966). The jury rules on the law, not because it is entitled by expertise to do so, but because in the chronological sequence of trials the jury has the last word. Chief Justice Shaw recognized this in his thorough and scholarly opinion in *Commonwealth v. Anthes,* 71 Mass. (5 Gray) 185, 208 (1855):

> [I]n practice, the verdict of a jury, both upon the law and the fact, is conclusive; because, from the nature of the proceeding, there is no judicial power by which the conclusion of law thus brought upon the record by that verdict can be reversed, set aside, or inquired into.
>
> A general verdict, either of conviction or acquittal, does embody and declare the result of both the law and the fact, and there is no mode of separating them on the record so as to ascertain whether the jury passed their judgment on the law, or only on the evidence. The law authorized them to adjudicate definitively on the evidence; the law presumes that they acted upon correct rules of law given them by the judge; the verdict therefore stands conclusive and unquestionable, in point both of law and fact.
>
> In a certain limited sense, therefore, it may be said that the jury have a power and a legal right to pass upon both the law and the fact. And this is sufficient to account for many and most of the *dicta* in which the proposition is stated. But it would be more accurate to state, that it is the right of the jury to return a general verdict; this draws after it, as a necessary consequence, that they incidentally pass upon the law.

The ability to pass upon the law then, is inherent in the jury's crucial right, the right to return a general verdict. The jury is not deprived of its right to find a defendant guilty or not guilty upon each and every element of the offense charged by a judge's declaration of law, since the jury applies the law as given by the judge, and is the final arbiter of guilt or innocence. Therefore, it was not error for the district judge to inform the jury that, as a matter of law, the Gold Certificate was a security under the detailed and thorough definition by the Congress. Making that ruling was not synonomous to directing a verdict. Even if the only element of the offense in dispute was whether or not the Gold Certificate was a security, and the judge instructed that the Gold Certificate was a security as a matter of law, the jury would still have had the power to return a general verdict of not guilty. That would be an instance of the jury deciding against the law as pronounced by the judge.

The majority of the Court takes the stringent view that "every element" of the offense must be submitted to the jury, and includes the definition of a security as an element of the offense. The majority relies on *Roe v. United States,* 287 F.2d 435 (5th Cir.), *cert. denied,* 368 U.S. 824, 82 S.Ct. 43, 7 L.Ed.2d 29 (1961), for the proposition that the jury is the proper instrument to decide

whether documents are securities, and cites the passage:

> More than that, this being a criminal case ... no fact, not even an undisputed fact, may be determined by the judge. The plea of not guilty puts all in issue, even the most patent truths. In our federal system, the Trial Court may never instruct a verdict in whole or in part.

287 F.2d at 440. This statement by the Court in *Roe,* however, becomes more accurate and enlightening when it is read in connection with the words which immediately precede it:

> [W]e determine that, *as a matter of law,* the evidence of these transactions, if credited, would constitute the sale or delivery of an "investment contract," hence a "security" thereby requiring registration with the SEC. But the if in "if credited" is a big one. By its very nature, *it is the peculiar facts of the setting which turns the offer from a mere sale of property into a sale of a security. That means that the trier of fact, here a jury, must determine the issue.*

*Id.* (emphasis added). *Roe* concerned a mail solicitation campaign which culminated in the sale of mineral leases. The mineral leases on their face were not securities. Rather, the representations made in connection with the sales brought the mineral leases into the category of securities. Thus the question of whether the mineral leases were securities was a *mixed* question of fact and law. I have no dispute with the proposition that evidence of representations made to prospective customers raised fact issues for the jury. Only if this evidence was credited did the mineral leases constitute securities *as a matter of law.* In *Roe,* then, the mixed question was properly submitted to the jury.

*Roe* is correctly decided. So also are all four cases the majority cites in footnote sixteen in support of its position. In those cases there were questions of fact involved which had to be submitted to a jury. It is accurate to say that one may not decide as a question of law whether an outlet is "comparable," *United States v. Heller,* 635 F.2d 848, 856–57 (Em.App.1980), whether a loan is a "loanshark" loan, *United States v. Benedetto,* 558 F.2d 171, 176–77 (3d Cir. 1977), whether a pop bottle is a dangerous weapon, *Greenfield v. United States,* 341 F.2d 411, 412–13 (D.C.Cir.1964) (per curiam), or whether a defendant has failed to pay a wagering tax, *DeCecco v. United States,* 338 F.2d 797, 798 (1st Cir.1964). All of those questions turn on a number of factual circumstances rather than on a concrete document's characteristics and a detailed definition provided by Congress. In *Heller* the jury had to weigh witnesses' testimony to determine what was the nearest comparable outlet. In *Benedetto* there was the question of whether creditors knew they incurred the risk of violence in taking out high interest loans. In *Greenfield* the jury had to examine the circumstances and manner in which a pop bottle was wielded to determine if it was a dangerous weapon, and in *DeCecco* the jury had to decide whether the government's failure to issue a wagering stamp to the defendant was sufficient to prove that the defendant had not paid his tax.

All of the above cases differ from the present case. In this case there was no need to weigh testimony or rely on external facts to determine that the Gold Certificate was a security. Although a "Gold Certificate Contract" is not expressly named under the statute as is a travelers check, the certificate fell literally into the statutory definition by undertaking to "assign" gold. The statutory definition includes an "instrument or document or writing evidencing ownership of goods, wares, and merchandise, or transferring or assigning any right, title, or interest in or to goods, wares, and merchandise...." 18 U.S.C. § 2311. Thus it was unnecessary to decide factual issues to decide that the Gold Certificate was a security. The question was properly decided as a question of law, whereas the cases the majority relies on were properly characterized as presenting mixed questions of fact and law, and thus jury questions.

The crucial issue which is to be submitted to the jury in a case such as the one before

us is whether the accused acted with knowledge and intent—in other words, did Johnson know the document was a security? The element of intent is usually a subjective view of the state of mind of the accused—a view that belongs within the exclusive domain of the jury. *United States v. De La Barra,* 447 F.2d 193 (5th Cir.1971); *Anderson v. United States,* 406 F.2d 529 (8th Cir.1969); *Hansen v. United States,* 326 F.2d 152 (9th Cir.1963); *Karikas v. United States,* 296 F.2d 434 (D.C.Cir.1961); *Harris v. United States,* 285 F.2d 85 (5th Cir.1960), *cert. denied,* 368 U.S. 820, 82 S.Ct. 38, 7 L.Ed.2d 26 (1961). A defendant, for example, may believe he was carrying a water pistol rather than a .357 Magnum, but that negates only the requisite intent, not the existence of a firearm. In the case before us, Johnson might have believed he was transporting something other than a security. Such a belief would have been incorrect as a matter of law, but would have negated the requisite intent.

Admittedly, the question of whether Johnson knowingly and intentionally transported a falsely made security across state lines must be proved in every respect in order to sustain a conviction. The majority of the Court has focused on the term "security" in urging that Johnson has not had a sufficient jury determination of his guilt. But the majority's focus is unpersuasive, for the jury did confer upon proper instruction on the crucial fact issues needed to sustain a conviction. The question that only a jury could decide was not whether the document was a security, but whether Johnson intended it to serve as a security when he moved it into interstate commerce. The jury, after having been charged that the document was a security, found that he transported it across state lines *knowingly and intentionally.* They found no mistaken belief that the Gold Certificate Contract was something else, such as a brokerage contract or a piece of tomfoolery. The jury thus found Johnson guilty of every factual element of the offense with which he was charged.

The majority opinion correctly lists relevancy and pertinency as significant histori-

cal instances where judges decide some elements of offenses as questions of law. *Sinclair v. United States,* 279 U.S. 263, 298, 49 S.Ct. 268, 273, 73 L.Ed. 692, 700 (1929). It is asserted that these instances are exceptions and should not be extended to the definition of a security. The majority distinguishes between deciding pertinency and materiality and deciding whether a document falls within a statutory definition on the basis that one primarily *reasons* to determine whether a question or evidence is pertinent or material, whereas one *weighs evidence* to decide whether a document is a security. The majority's distinction is not persuasive since a judge cannot decide relevancy or materiality in a vacuum; the judge must consider the *factual* context of an investigation or trial to reason whether a question or piece of evidence is pertinent.

There are many instances where the judge may be able to determine that an article falls within a statutory definition without having to consider more than the definition and the article itself. The majority of the Court apparently recognizes this, as indicated by its somewhat contradictory footnote thirteen. There the Court states that whether a *generic* type of document, such as a traveler's check or an equipment lease, is a security is a question of law. The majority offers no explanation for why a defendant has no right to have a jury decide whether a generic document is a security, but does have a right to have a jury decide whether some "other" document meets Congress' definition. The distinction is not supported by logic or authority. The proper test is clear: as long as a judge need not weigh the probative value of evidence to make his decision, it is proper for a judge to determine whether or not an item is a security as a matter of law. Although there was expert testimony introduced in this case designed to sway the jury, as long as the judge could conclude from the detailed statutory definition, from legal precedent, and from the certificate itself that the Gold Certificate was a security as a matter of law, it was proper for him to do so.

Precise authority already controls this case. This is the authority establishing what constitutes a security as a question of law under Section 2311. As the majority opinion points out, the distinction between a question of fact and a question of law is not always clear. Mere difficulty of distinction, however, does not relieve the judge of his duty to make such a distinction.[3] In this instance, both logic and precedent confirm that it was proper to find the Gold Certificate a security as a matter of law. The case law both in this and other courts is overwhelming in establishing in criminal trials under the National Stolen Property Act, 18 U.S.C. §§ 2311, 2314, the statute under which appellant was convicted, that documents covered by the definition of "securities" in that statute[4] are properly found to be securities as a matter of law. The Supreme Court faced a case involving stolen checks in *United States v. Sheridan*, 329 U.S. 379, 67 S.Ct. 332, 91 L.Ed. 359 (1946). The Court did not question what was apparently the trial court's ruling that the checks were securities within the meaning of the statute. The only factual issue was found to be whether the defendant had brought about the requisite interstate commerce. In *United States v. Elliott*, 571 F.2d 880, 907–08 (5th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978), this Court held that a Georgia state automobile title certificate is evidence of an interest in property as a matter of law. The case, brought under 18 U.S.C. § 2315 and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, looked to the section 2311 definition of security as including a document evidencing ownership of goods, and found that the title

---

**3.** The distinction between "security" as a factual question and "security" as a legal doctrine is the difference between a context of action and context of being. In *United States v. Manuszak*, 234 F.2d 421 (3d Cir.1956), the final determination of "stolen goods" under section 2314 was held to be a jury issue. Determining that the goods were stolen would have required an adoption of factual evidence that someone had *acted* to steal the goods. In *Roe, supra*, 287 F.2d at 328, this Circuit observed that whether the issue should be treated as factual or legal depended upon whether facts outside the document weighed on the question of security status. By contrast, the definition of "security" under section 2314 in the case before us requires no such adoption of factual evidence. The determination does not rest on a party's actions in creating, misrepresenting, or forging the documents. It rests only on what the document is, a context of *being*. It is the nature of the document itself which is at issue, not what may or may not have happened in connection with it.

As the Ninth Circuit noted in a recent workers' compensation case:

Whether particular facts fit within the meaning of certain legal terms is a question of law. Cf. *Estates of Franklin v. Commissioner*, 544 F.2d 1045, 1047 n. 3 (9th Cir.1976) (characteristics of transaction are questions of fact, but whether such characteristics constitute 'sale for tax purposes' is a question of law); K. Davis, *Administrative Law Treatise* § 30.-01 (3d ed. 1972) (circumstances of arrest are questions of fact, but whether such circumstances amount to 'probable cause' is a question of law).

*Duncanson-Harrelson Co. v. Director, Office of Workers' Compensation Programs*, 686 F.2d 1336, 1341 (9th Cir.1982).

**4.** Under 18 U.S.C. § 2314, it is illegal to transport a falsely made security knowingly in interstate commerce. The term "security" for purposes of § 2314 is defined in 18 U.S.C. § 2311. It provides:

"Securities" includes any note, stock certificate, bond, debenture, check, draft, warrant, traveler's check, letter of credit, warehouse receipt, negotiable bill of lading, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate; certificate of interest in property, tangible or intangible; instrument or document or writing evidencing ownership of goods, wares, and merchandise, or transferring or assigning any right, title, or interest in or to goods, wares, and merchandise; or, in general, any instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, warrant, or right to subscribe to or purchase any of the foregoing, or any forged, counterfeited, or spurious representation of any of the foregoing. . . .

As discussed later in this opinion, this § 2311 definition of "security" relevant to the § 2314 interstate transportation charge, is broader than that under the Securities Acts of 1933 and 1934.

certificate fit within the statutory definition as a matter of law.

Similarly, in *United States v. Bass,* 562 F.2d 967, 969 (5th Cir.1977), we affirmed a holding that payroll drafts were securities as a matter of law within the reach of section 2314. We upheld the verdict of the district court, finding that the drafts were covered regardless of whether they were checks or sight drafts, since both were covered under the statute.

*Popeko v. United States,* 294 F.2d 168 (5th Cir.1961), examined whether cashier's checks were covered under section 2311. The defendant objected on appeal to the lack of a jury instruction defining the term "security." We found that no instruction was necessary because the district court correctly treated cashier's checks as securities as a matter of law under the statute.

The Eighth Circuit examined the scope of section 2311 in *United States v. Speidel,* 562 F.2d 1129 (8th Cir.1977), *cert. denied,* 435 U.S. 915, 98 S.Ct. 1468, 55 L.Ed.2d 505 (1978). The district court below had dismissed an indictment under section 2314 on the ground that quitclaim deeds, as a matter of law, were not securities under section 2311. The circuit court reversed, relying on legislative history, statutory construction, and other methods of legal interpretation to conclude that as a matter of law quitclaim deeds do constitute "securities" under section 2311. The Sixth Circuit, in *United States v. Deaton,* 364 F.2d 820, 821 (6th Cir.1966), *cert. denied,* 386 U.S. 977, 87 S.Ct. 1173, 18 L.Ed.2d 138 (1967), found that checks were securities under section 2311 as a matter of law, citing *United States v. Sheridan, supra. Accord, United States v. Tucker,* 473 F.2d 1290 (6th Cir.), *cert. denied,* 412 U.S. 942, 93 S.Ct. 2785, 37 L.Ed.2d

402 (1973). Similar holdings have been made in the Second Circuit, *United States v. Wexler,* 621 F.2d 1218 (2d Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 119, 66 L.Ed.2d 48 (1980) (equipment leases), and the Tenth Circuit, *United States v. Roby,* 499 F.2d 151 (10th Cir.1974) (money orders); *United States v. Austin,* 462 F.2d 724 (10th Cir.), *cert. denied,* 409 U.S. 1048, 93 S.Ct. 518, 34 L.Ed.2d 501 (1972) (loan commitment letters).

There is some logic in recognizing also that courts have decided certain documents are not securities as a matter of law. Of course, such a decision is not at all controlling since such a decision does not place any pressure upon the right of an accused to a jury trial. Briefly, in *United States v. Jones,* 450 F.2d 523 (5th Cir.1971), this Court found that as a matter of law an airline ticket was not a security under section 2311.[5] Similarly, in *Merrill v. United States,* 338 F.2d 763 (5th Cir.1964), *cert. denied,* 386 U.S. 994, 87 S.Ct. 1311, 18 L.Ed.2d 340 (1967), we found that a gasoline company credit card was not a security.

The critical conclusion from these summarized cases is that the court in this case had the authority to decide, *as a matter of law,* that the Gold Certificate Contract was a "security" within the meaning of the National Stolen Property Act. The statute defines what a "security" is, and the court properly applied that definition as a matter of law.

Next, we look to other, similar statutory schemes for additional guidance.[6] The most obvious source of guidance is the voluminous jurisprudence interpreting the Securities Act of 1933, 15 U.S.C. §§ 77a–77bb,

**5.** *But c.f. United States v. Gallipoli,* 599 F.2d 100 (5th Cir.1979) (although airline ticket is not included in Congress' definition of a security, as a matter of law it is merchandise within the scope of 18 U.S.C. § 2315).

**6.** As discussed later in this opinion, the paucity of case law on this subject might be explained in part by a failure of defense attorneys to request a jury instruction on this point. As a matter of trial strategy it might well be unwise

for a defendant to demand a jury instruction that submits to the jury the issue of whether General Motors common stock is a security or a Ford sedan is an automobile. This might be because the defense would feel it unwise to cast aspersions upon the intelligence of the jury by asking it such a question. But it might also be because the defense realizes the stock is a security as a matter of law and the sedan is an automobile as a matter of law.

and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78kk (Securities Acts).

The majority of the Securities Acts cases are civil rather than criminal in nature, but this does not necessarily limit the usefulness of considering their role as precedents. Violations of the Securities Acts are subject to both civil and criminal enforcement. *Compare, e.g.,* 15 U.S.C. §§ 77k, 77l [1933 Act] *and* § 78r [1934 Act] (civil penalties) *with* 15 U.S.C. § 77x [1933 Act] *and* § 78ff [1934 Act] (criminal penalties). So even the civil cases under the Securities Acts are useful analogies in the case before us. The majority's contention would mean that a pure matter of law in a civil prosecution under the Securities Acts would become a question of fact in a criminal case under that same provision of the statute. Such a conclusion is doubtful, especially considering that there is a constitutional right to jury trial in civil cases as well, *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 510, 79 S.Ct. 948, 956, 3 L.Ed.2d 988, 997 (1959).

There has been a steady line of cases, civil and criminal, under the Securities Acts upholding a finding of a "security" as a matter of law. The case authority begins with *Securities and Exchange Commission v. C.M. Joiner Leasing Corp.,* 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943), holding that fractional interests in mineral leases are securities as a matter of law, and *Securities and Exchange Commission v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), holding that interests in orange groves are securities. The *Howey* case was a suit for an injunction against the sale of orange grove interests that failed to comply with the registration requirements of the Securities Acts. Justice Frankfurter's dissent in *Howey, id.* at 301–02, 66 S.Ct. at 1104, calling for the Court to uphold the district court's determination as a reasona-

ble factual finding rather than a freely reversible legal issue, underscores the conclusion that the majority's determination was made as a question of law.[7]

A similar determination was made in *United States v. Fishbein,* 446 F.2d 1201 (9th Cir.1971), *cert. denied,* 404 U.S. 1019, 92 S.Ct. 683, 30 L.Ed.2d 667 (1972), a case involving diversion of corporate funds through stock transactions. The case was brought under the Stolen Property Act and the Securities Acts. The court relied on the definition of security under the 1933 Act, 15 U.S.C. § 77b, to find that stock is a security as a matter of law.

> It is urged that the Court erred in instructing the jury that the stock was a security. Stock is by law a security (15 U.S.C., § 77b). In some cases there may be a question of fact whether a thing sold is a security (*SEC v. C.M. Joiner Leasing Corporation,* 320 U.S. 344, 64 S.Ct. 120 [88 L.Ed. 88] (1943); *Roe v. United States,* 287 F.2d 435 (5th Cir.1961)), but there was no fact question here.

446 F.2d at 1207. This firm conclusion was drawn in a criminal prosecution. Note also that the court distinguished our *Roe* decision, just as I do here, as involving fact questions.

The Tenth Circuit has found reversible error in giving the jury the final determination of "security" in a civil case. *Ahrens v. American-Canadian Beaver Co.,* 428 F.2d 926, 928 (10th Cir.1970).[8]

The same problem of separating legal from factual issues occurs in criminal statutes other than in the securities context. These other situations involving criminal prosecution bolster the conclusion that not every issue in a criminal case has to be submitted to the jury. One of the best known categories of cases in which this is

---

**7.** The issue of whether the determination was one of law or of fact was properly before the Court, because the original question in the district court was whether the shares were securities, and that court had made the determination as a matter of law. 60 F.Supp. 440 (S.D.Fla. 1945).

**8.** This Court, however, has at least once upheld a district court's submission of this issue to a jury. *Nor-Tex Agencies, Inc. v. Jones,* 482 F.2d 1093 (5th Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 873 (1974) (whether document was an "investment contract" under the Securities Acts properly decided by jury).

true is the category of cases which raise First Amendment issues. In *Dennis v. United States*, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951), defendants had been convicted of violating the Smith Act by conspiring to form a Communist Party which would teach and advocate the overthrow of the United States government by force and violence. The Supreme Court held that it was the jury's role to determine whether defendants' acts violated the terms of the statute, and that it was the Court's role to determine whether such a violation created "a clear and present danger of a substantive evil that Congress had the right to prevent." "Bearing ... the marks of a 'question of law,' the issue is properly one for the judge to decide." *Id.* at 515, 71 S.Ct. at 870, 95 L.Ed. at 1155.

The Constitution guaranteed a right to a jury trial to Dennis and his co-defendants. Yet not every element of the offense was submitted to the jury. An "element of the offense" in *Dennis* was a showing of "clear and present danger." Yet the Court held, over the dissents of Justices Black and Douglas, that this element of the offense was to be resolved as a question of law. 341 U.S. at 580, 587, 71 S.Ct. at 902, 906. So also the element of "security" under a detailed statutory definition is a question of law when the document is clear on its face.

In *United States v. Pietri*, 683 F.2d 877 (5th Cir.1982), we upheld a conviction for carrying a weapon during the commission of a felony. We did not require a jury determination of whether a .38 caliber Smith & Wesson revolver is a weapon. Although that case does not show explicitly that such a determination was requested, we had no problem finding a .38 caliber revolver to be a weapon as a matter of law.

The true factual issue in firearms cases is not whether the gun in question is a weapon, but rather whether the accused intentionally and willfully possessed the illegal weapon. In *United States v. Hernandez*, 662 F.2d 289 (5th Cir.1981) (per curiam), we affirmed a conviction for shipping firearms in interstate commerce. We upheld the finding as a matter of law that the weapons in question were firearms within the meaning of the statute. However, two convictions under other counts in the indictment were reversed because those counts required an intentional and willful shipping of prohibited firearms in interstate commerce. Since no jury instruction was given in the district court regarding the effect of the defendant's claimed ignorance of the law, we found that the jury had no standard by which to judge the requisite intent and willfulness. Had *Hernandez* believed, for example, that he was shipping water pistols rather than sawed-off shotguns, the jury should have acquitted on the counts requiring specific intent. We therefore remanded the case for a proper jury determination of knowledge and intent. Similarly, in *United States v. Davis*, 583 F.2d 190 (5th Cir.1978), this Court examined a conviction for conspiring to export sawed-off shotguns. We did not demand a jury determination of whether the shotgun barrels were indeed less than eighteen inches long and therefore covered under the statute. But we did require a jury determination regarding the defendants' knowledge and intent.

The Dyer Act, 18 U.S.C. § 2312, prohibits the interstate transportation of stolen motor vehicles. In *United States v. Graves*, 669 F.2d 964 (5th Cir.1982), this Court did not require a jury determination of whether stolen trucks were stolen motor vehicles within the meaning of the Act. We required only a jury determination as to knowledge and intent; we found sufficient evidence for the jury's verdict of guilty. *See also United States v. Beil*, 577 F.2d 1313 (5th Cir.1978), *cert. denied*, 440 U.S. 946, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979) (on charge of violating Dyer Act jury not asked to consider what is a motor vehicle). Although the inclusion of a car or truck within the Dyer Act's description of "motor vehicle" might seem too frivolous to present to a jury, that has not been our rationale in accepting as a matter of law that such articles are within the statutory definition. *See also Frigaliment Importing Co. v. B.N.S. International Sales Corp.*, 190 F.Supp. 116, 117 (S.D.N.Y.1960) (civil case ("The issue is, what is chicken?"). That the

determination may be difficult is insufficient to permit a judge to pass a legal question to a jury.

Still other criminal statutes raise the "fact or law" inquiry. In *United States v. Miller,* 520 F.2d 1208 (9th Cir.1975), the defendant was charged with stealing government property. The Ninth Circuit held that "[w]hether an item is government property ordinarily is a question of law, and when the facts so establish, it is proper for the court to give such an instruction." The Tenth Circuit also followed that rule in *United States v. Owens,* 536 F.2d 340 (10th Cir.1976). The court overruled the district court's ruling that certain funds were government money as a matter of law, not because such a ruling was improper, but because there was insufficient evidence in that case to rule that the money was government money, a factual issue.

The Hobbs Act, 18 U.S.C. § 1951, prohibits threats or violence that affect interstate commerce. Although a jury is given the power to authenticate the factual testimony in a Hobbs Act case, "[a]ll of the Hobbs Act cases agree that the court should determine whether the facts alleged meet the statutory requirement of affecting interstate commerce." *United States v. Hyde,* 448 F.2d 815, 839 (5th Cir.1971), *cert. denied,* 404 U.S. 1058, 92 S.Ct. 736, 30 L.Ed.2d 745 (1972); *see id.* at 839–42 and cases cited therein. Under the wire fraud acts, the question of whether a microwave transmission was a radio signal under the statute was decided by the court and not the jury in *United States v. Bohr,* 581 F.2d 1294 (8th Cir.), *cert. denied,* 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978). And under 18 U.S.C. § 549, the court in *United States v. O'Brien,* 255 F.Supp. 755 (E.D.Mich.1965) instructed the jury that the place from which goods were allegedly stolen was a bonded warehouse as a matter of law. The Sixth Circuit affirmed, *United States v. Parisi,* 365 F.2d 601 (6th Cir.1966), *vacated on other grounds sub nom. O'Brien v. United States,* 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967).

Yet all of the instances detailed above are but a sample of the broad range of questions that are not submitted to a criminal jury but are decided by the court as a matter of law. Such cases serve to illustrate the established principle that a judge has the right to rule on a matter of law in a criminal case, even if that matter of law concerns an element of the offense. By its holding that such a ruling in a criminal trial strips the jury of its right to apply the law to the facts, this Court is moving beyond preserving the jury's historic right to return a general verdict.

The majority of the Court in this case abandons a long line of authority holding that an article involved in a criminal case is properly identified by the court as fitting a statutory definition as a matter of law when the intrinsic nature of the article meets the definition without the need for extrinsic evidence to explain its nature. The majority opinion cites not one case to the contrary. The Constitution has never until now been held to require the expansion of the right to a jury trial to encompass such a case. The judgment of the district court was correct and should be affirmed.